**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 676 CAP |
| | : |
| Appellee | : Appeal from the Order entered on |
| | : 01/03/2013 in the Court of Common Pleas, |
| | : Criminal Division of Philadelphia County at |
| v. | : No. CP-51-CR-0700431-1994 |
| | : |
| | : SUBMITTED:  January 5, 2015 |
| LENWOOD MASON, | : |
| | : |
| Appellant | : |

**OPINION**

MR. JUSTICE STEVENS                    DECIDED:   December 29, 2015

This is a collateral capital appeal from an order of the Court of Common Pleas of

Philadelphia County dismissing Appellant Lenwood Mason's first petition for relief under

the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.[1]

Appellant's convictions arose from the June 19, 1994, stabbing death of Iona

Jeffries.  The underlying facts as adduced at trial were enunciated by this Court in

affirming Appellant's conviction and sentence on direct appeal:

> [O]n March 31, 1994, police were called to the 3800 block of Clearfield
> Street in Philadelphia.   Officer Terry Brown observed Appellant walking on
> Clearfield Street, with Iona Jeffries close to his side.   Noting a frightened
> look on Ms. Jeffries' face, the officer approached her and asked if she was

---

[1] This Court has exclusive jurisdiction over appeals from the grant or denial of
post-conviction relief in death penalty cases.   42 Pa.C.S. § 9546(d).

all right. The officer noticed bruises on Ms. Jeffries' forehead, shoulder, neck and mouth. Although Appellant told the officer that Ms. Jeffries had been attacked by several other women, Ms. Jeffries informed the officer that Appellant had actually caused her injuries. Ms. Jeffries explained to the officer that she was reluctant to press charges against Appellant, as she feared he would kill her. Based on his [sic] own observations and Ms. Jeffries' statements, however, the officer placed Appellant under arrest.

Approximately three months later, on the evening of June 18, 1994, Ms. Jeffries was at a bar, Cadillac Slim's, with Appellant and several of her friends. Appellant had been released from prison two days earlier, on June 16, 1994. When Ms. Jeffries and her friends decided to leave Cadillac Slim's and go to another club, Ms. Jeffries asked that a male acquaintance drive Appellant home, as she did not want him to accompany her to the club. Upset by Ms. Jeffries' plans to exclude him, Appellant yelled, "You want it like that?" and ran out of the bar.

At approximately 9:30 the following morning, Ms. Jeffries' mother, Mrs. Wisteria Jeffries, was at her home when she heard Appellant banging on the door. As Wisteria Jeffries approached the door, she saw Appellant's hand protruding through the screen door. When Wisteria Jeffries asked Appellant what he wanted, he replied that he needed to speak with Ms. Jeffries. Wisteria Jeffries explained that Ms. Jeffries was asleep. After Appellant insisted that he speak with Ms. Jeffries, Wisteria Jeffries told Appellant to wait outside while she got Ms. Jeffries. She locked the door and went upstairs to Ms. Jeffries' room, where Ms. Jeffries was sleeping on a bed with her then three year-old son, Anthony. Ms. Jeffries refused to come downstairs. Wisteria Jeffries returned to the front door and told Appellant that Ms. Jeffries was sleeping and that he would have to wait to speak with her. Appellant then forced his way into the house, pushed past Wisteria Jeffries, and ran up the stairs. Wisteria Jeffries immediately called the police.

Wisteria Jeffries retrieved a knife from the kitchen and began to head upstairs, when she saw Appellant descending the steps. Appellant stated to Wisteria Jeffries, "I got her now." At that point, Wisteria Jeffries attempted to stab Appellant, but he pushed her aside and ran outside, where a neighbor, Greg Bell, saw Appellant placing what appeared to be a knife into the waistband of his pants. Wisteria Jeffries ran upstairs to Ms. Jeffries' bedroom and found Ms. Jeffries bleeding profusely from multiple stab wounds. Police and rescue units arrived and Ms. Jeffries was taken to the hospital, where she was pronounced dead.[2] Later that same day, Appellant surrendered to the police and was charged with murder in the first-degree, burglary and possessing an instrument of crime.

---

[2] According to the testimony of the chief medical examiner for Philadelphia County, Ms. Jeffries' death was caused by eighteen stab wounds to her body, including wounds to her head, neck, chest, back, abdomen, arm, groin and leg.

Commonwealth v. Mason, 559 Pa. 500, 507-08, 741 A.2d 708, 712 (1999).

Attorney Thomas W. Moore, Jr., Esq., undertook Appellant's representation, hiring an investigator, interviewing Appellant and his mother, and retaining Dr. Allan Tepper, an expert in the field of forensic and clinical psychology, to perform a psychological evaluation of Appellant and to provide testimony during the guilt and sentencing phases of trial. As part of his evaluation, Dr. Tepper conducted a clinical interview of Appellant, administered intelligence tests, interviewed Appellant's mother, and reviewed police discovery materials along with Philadelphia School District records and past drug treatment records. Letter from Dr. Allan Tepper to trial counsel, dated 3/28/95; Declaration and Affidavit of Dr. Allan Tepper, dated 10/29/07, filed 11/1/07.

A jury trial before the Honorable C. Darnell Jones was conducted in February 1996. As we noted on direct appeal, the trial included the following testimony:

> Appellant testified on his own behalf, claiming that he had been drinking and doing drugs, including PCP for the first time, at the bar on the night before the murder. He testified that after he smoked the PCP, everything went blurry and that he did not recall leaving Cadillac Slim's or going to Ms. Jeffries' house on the morning of her murder. He further maintained that he did not regain his senses again until late in the evening on the day of the murder, when he was already in jail. Appellant's mother and brother [Kevin Mason] also testified in Appellant's defense. Essentially, they claimed that when they saw Appellant on the day of the murder, he was under the influence of drugs and that his condition was unlike any "high" that they had ever seen him experience.

Mason, 559 Pa. at 509, 741 A.2d at 713. On February 15, 1996, the jury found Appellant guilty of first-degree murder, burglary, and possessing an instrument of crime. At the penalty phase of trial, Judge Jones instructed the jury with regard to three aggravating

circumstances and four mitigating circumstances.[3]   All the evidence presented on Appellant's behalf during the guilt phase of trial was incorporated during the penalty phase, and Appellant's mother, his uncle, Larry Lawhorn, and Dr. Tepper provided additional testimony to support the mitigating circumstances.[4]   Following the penalty phase, the jury returned a verdict of death after finding two aggravating circumstances and no mitigating circumstances.[5]   Judge Jones formally imposed the death sentence on February 20, 1996.

Following Appellant's conviction and sentence, trial counsel was replaced by Gerald Stein, Esq., who filed a direct appeal on Appellant's behalf.   Appellant initially challenged the sufficiency of the evidence to support the jury's verdict of first-degree murder on the grounds that (1) there was insufficient evidence to establish that Appellant

---

[3] The aggravating circumstances were that "[t]he defendant committed a killing while in the perpetration of a felony," 42 Pa.C.S. § 9711(d)(6); "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense," Id. § 9711(d)(7); and "[t]he defendant has a significant history of felony convictions involving the use or threat of violence to the person."   Id. § 9711(d)(9).   N.T. 2/16/96 at 130.

The mitigating circumstances were that "[t]he defendant was under the influence of extreme mental or emotional disturbance," 42 Pa.C.S. § 9711(e)(2), "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired," Id. § 9711(e)(3), "[t]he age of the defendant at the time of the crime," Id. § 9711(e)(4), and "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense."   Id. § 9711(e)(8).   N.T. 2/16/96 at 131-132.
[4] Although Dr. Tepper had been retained by counsel to provide testimony during both the guilt and sentencing phases of trial, following his evaluation of Appellant he had informed trial counsel that he could not provide evidence in support of any guilt phase defenses, thus trial counsel only presented Dr. Tepper's testimony during the penalty phase.   N.T. 2/17/96 at 12-13.
[5] The jury found that Appellant committed the murder while in the commission of a felony and that he had a significant history of committing crimes of violence.

acted with the necessary premeditation; (2) the jury erred in failing to find that Appellant was acting under the "heat of passion" when he fatally stabbed Ms. Jeffries; and (3) the jury erred in finding a specific intent to kill because Appellant presented evidence to show that he was intoxicated at the time of the killing. See Mason, 559 Pa. at 509-511, 741 A.2d at 713-714. This Court found no merit to Appellant's sufficiency claims, determining that: (1) the circumstances of the case did not, as a matter of law, foreclose a finding of premeditation; (2) the record did not support a heat of passion claim since Appellant claimed that he was so intoxicated at the time of the stabbing that he could not remember whether words were exchanged which would give rise to a heat of passion defense, there was no evidence that the victim did anything immediately before the stabbing to provoke Appellant, and the victim's son testified that his mother was just lying on the bed when Appellant came into the room and began stabbing her; and (3) it was well within the power of the jury to make a credibility determination and disbelieve the evidence presented by Appellant to establish that intoxication prevented him from forming a specific intent to kill. Id., 559 Pa. at 510-512, 741 A.2d at 713-714.[6]

Appellant's direct appeal additionally alleged that trial counsel rendered ineffective assistance during the guilt phase of Appellant's trial by (1) failing to properly consult with Appellant prior to trial; (2) failing to conduct an adequate pre-trial investigation, which would have revealed corroborative evidence that Appellant and the victim reconciled and spent time together in the days immediately before the murder; and (3) referring to the stabbing as a heinous crime during his guilt phase closing argument. Id., 559 Pa. at 513,

---

[6] In addition to disputing the sufficiency of the evidence, Appellant also unsuccessfully argued that the verdict of first-degree murder was against the weight of the evidence.

515, 518, 741 A.2d at 715, 716, 718. This Court determined, however, that Appellant had failed to show that counsel was ineffective. Specifically, we explained that the amount of pre-trial consultation is not a legitimate basis for inferring the total extent and adequacy of counsel's pre-trial preparation, and we further noted that Appellant had failed to allege any issues that his counsel should have raised or any beneficial information that his counsel would have discovered had further pre-trial consultations been held. Id., 559 Pa. at 514, 741 A.2d at 715 Further, regarding the adequacy of counsel's pretrial investigation, we found that the jury was aware of the apparent reconciliation through the testimony of several witnesses, including the victim's mother herself; thus, the evidence allegedly missed was merely cumulative, and, regardless, would not have precluded the first-degree murder conviction. Id., 559 Pa. at 515-516, 741 A.2d at 716-717. Lastly, as to counsel's guilt phase closing argument, this Court determined the record reflected that the challenged comment was merely a reminder to the jury that evidence, not emotion, should control the outcome of the case, and, when read in context, the comment was clearly part of counsel's strategy to persuade the jury that despite the crime's gruesomeness the evidence showed Appellant was too intoxicated to form the specific intent necessary for a first-degree murder conviction. Id., 559 Pa. at 518-519, 741 A.2d at 718.

In addition to leveling guilt phase ineffectiveness claims, Appellant also asserted on direct appeal that he was entitled to a new trial based on after discovered evidence consisting of a letter written by the victim to Appellant while he was imprisoned and a picture of the victim visiting Appellant in prison, which, Appellant asserted, demonstrated their close and intimate relationship. Id., 559 Pa. at 517, 741 A.2d at 717. Again, this

Court determined that no relief was due since Appellant failed to meet any of the requirements for the grant of a new trial based on after-discovered evidence. Id.

Appellant's sentence was thus affirmed by this Court on November 24, 1999, and it became final on October 2, 2000, when the United States Supreme Court denied certiorari. Appellant's execution was subsequently scheduled for March 8, 2001, but was stayed following the filing of a timely pro se PCRA petition on February 13, 2001.[7] Following several extensions of time, Attorney Patrick Egan filed an amended petition on Appellant's behalf on January 25, 2002, raising thirteen claims for relief and asserting entitlement to an evidentiary hearing and discovery.[8] In addition to the January 25, 2002 amended PCRA petition, Appellant submitted a variety of additional documents including: a "Motion to Immediately Re-Sentence Petitioner to Life Imprisonment" pursuant to Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) and an accompanying "Supplemental Amended PCRA Petition";[9] a "Supplement and Response in Opposition

---

[7] Pursuant to Section 9545 of the PCRA, "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final … ." 42 Pa.C.S. § 9545(b)(1).

[8] The January 25, 2002 petition and several subsequent pleadings were captioned as "Petition[s] for Habeas Corpus Relief Pursuant to Article I, Section 14 of the Pennsylvania Constitution and Statutory Post Conviction Relief Under 42 Pa.C.S. § 9542 et seq. and Consolidated Memorandum of Law." Notwithstanding Appellant's captioning, this matter has been properly treated as a PCRA petition. See Commonwealth v. Breakiron, 566 Pa. 323, 327, 781 A.2d 94, 96 (2001) ("As Appellant alleges violations of the constitution and of law which undermine the truth-determining process, his claims are cognizable only under the PCRA and the writ of habeas corpus is unavailable.").

[9] Appellant's supplemental amended PCRA petition asserted that he is "[intellectually disabled]" and is thus exempt from execution in accordance with Atkins. The term "mental retardation" had been widely accepted by the medical community and was used in Atkins. The High Court has since approved the replacement of "mental retardation" with the phrase "intellectual disability" to describe the identical diagnosis. Hall v. Florida, ___ U.S. ___, 134 S.Ct. 1986, 1990, 188 L.Ed.2d 1007 (2014) (citing American
(continued…)

to the Commonwealth's Motion to Dismiss and Reply in Support of His Motion for Relief Pursuant to <u>Atkins v. Virginia</u>;" and two "Supplemental" PCRA petitions. In response, the Commonwealth filed several motions to dismiss, asserting that the majority of Appellant's claims were previously litigated or waived, or, if reviewable, meritless. Additionally, the Commonwealth assailed as boilerplate Appellant's allegations of appellate counsel's ineffectiveness, asserting that such claims are insufficient to overcome waiver.

Over the course of an eleven-year period, the parties' pleadings, along with various discovery requests and numerous ancillary motions, were heard first by Judge Jones and then by the Honorable M. Teresa Sarmina. Judge Jones scheduled an evidentiary hearing on several of Appellant's claims, but before the hearing occurred, Judge Jones was appointed to the Federal District Court and Appellant's case was transferred to Judge Sarmina. The evidentiary hearing was eventually held in October 2011, and was limited to Appellant's penalty phase issues. During the five day hearing, testimony on behalf of Appellant was elicited from Dr. Robert L. Sadoff, an expert in forensic psychiatry; Dr. Gerald Cooke, an expert in forensic and neuropsychology; Dr. Richard Restak, an expert in neurology; Dr. Allan Tepper, Appellant's trial expert; Attorney Thomas Moore, Appellant's trial counsel; Attorney Gerald Stein, Appellant's direct appeal counsel; Thelma Mason, Appellant's mother; Larry Lawhorn, Appellant's

---

(…continued)
Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 33 (5th ed. 2013) (DSM–5)); American Association on Intellectual and Developmental Disabilities, Intellectual Disability: Definition, Classification, and Systems of Support 3 (11th ed. 2010) (AAIDD Manual)). While we note that this case was litigated before <u>Hall</u> was decided, and the parties and their experts use both phrases, we opt to use the more recent nomenclature "intellectually disabled" unless the former term is integral to a quotation reproduced herein.

uncle; and Brian Mason, Appellant's brother. The Commonwealth, in turn, elicited the testimony of Dr. Barry Gordon, an expert in behavioral neurology with special expertise in neuropsychology.

At the close of testimony, the parties were directed to file post-hearing submissions addressing the penalty phase issues that had been the subject of the evidentiary hearing. N.T. 10/28/11 at 52. At that time it became clear that Appellant was concerned he had guilt phase claims that remained outstanding, as counsel expressed uncertainty as to which claims had been disposed of by Judge Jones and which claims were unresolved. Id. at 50-51. Appellant's counsel indicated to Judge Sarmina that he would provide the court with the status of Appellant's issues, and Judge Sarmina requested that, in addition to addressing the penalty phase mitigation issues, the parties' post-hearing submissions also indicate the issues upon which Judge Jones definitively ruled and what issues were "still open." Id. at 51-52. Judge Sarmina then set aside February 13, 2012, "for argument on this whole case, we will be able to see just where everything is at. And what issues might be still left. . . ." Id. at 54-55.

The parties filed the requested post-hearing submissions on February 6, 2012. Appellant initially argued to the court that trial counsel failed to fully investigate Appellant's background and provide such background information to his expert. Appellant's Post-Hearing Memorandum at 3.[10] Citing the affidavit and testimony of

---

[10] Appellant specifically faulted trial counsel for failing to obtain the following records:
(1) "Complete Philadelphia School Records," which Appellant asserted revealed the extent of his learning disability. Id. at 7 (citing PCRA exh. C-56, 60, 62, 69, 72, 91);
(2) "Albert Einstein Medical Center Records," which Appellant asserted revealed that he was treated for a drug overdose as a teenager and had a history of cocaine abuse. Id. at 8 (citing PCRA exh. C-166);
(continued…)

Thelma Mason and the affidavits of Brian Mason and MaryAnn Mason, Appellant also argued that trial counsel failed to conduct penalty hearing-focused interviews with Appellant's family, which Appellant suggested would have revealed (1) Appellant's early developmental problems and his failure to meet expected standards, (2) Appellant's hyperactivity and accident prone nature, (3) the use of corporal punishment in Appellant's household, (4) Appellant's difficulty adjusting in a predominantly white school and white neighborhood, (5) Appellant's drug use as a teen and subsequent addiction that caused paranoid hallucinations, and (6) Appellant's drug use on the night before the murder.  Id. at 9-13.  Appellant further maintained that trial counsel failed to investigate Appellant's mental health deficiencies, and, despite Dr. Tepper's pre-trial request, failed to provide additional school records, records of past psychiatric treatment and alcohol and drug abuse treatment, and criminal records, which, Appellant asserted, would have prompted Dr. Tepper to recommended neuropsychological testing that would have revealed Appellant suffered from organic brain damage and enabled Dr. Tepper to opine on the presence of statutory and non-statutory mental health mitigation.  In support of this

---

(…continued)

(3) "Philadelphia Prison System Records," which Appellant asserted revealed "important background data," possible suicide attempts, head trauma, and heavy drug use.  Id. (citing PCRA exh. C-218, 226, 230, 257, 263, 269, 276, 281, 282, 287, 288);

(4) The [March 11, 1981] Glen Mills Schools Diagnostic Report, which Appellant asserted revealed that he had taken IQ tests which revealed scores of 71 and 83, that he was performing well below his grade level in reading and math, and that he daydreamed excessively and had been described as "spacey."  Id. (citing PCRA exh. C-329, 331, 333, 334); and

(5) "Pre-sentence Reports and Mental Health Evaluations [dated 12/3/85, 12/10/90, 4/17/91 and 6/29/94], which Appellant asserted revealed a pattern of adjustment problems, self-reported history of impulsivity under stress, and schizoid personality disorder diagnosis.  Id. at 9 (citing PCRA exh. C-337, 338, 363, 367, 368, 390, 391).

argument, Appellant cited to the testimony of Doctors Cooke, Sadoff and Restak, who, according to Appellant, had the benefit of Appellant's full records and offered opinions that Appellant suffered from a variety of cognitive conditions that affected his behavior and would have altered the jury's determination as to the mitigating factors set forth in Sections 9711(e)(2) and (3). Id. at 15-21.[11]

In addition to raising claims of counsels' ineffectiveness, Appellant also argued to the court that the prosecutor's guilt phase closing arguments improperly urged the jury to convict Appellant because he had no remorse or sympathy for the victim. Id. at 40 (citing N.T. 2/14/96 at 99-100).[12] Appellant acknowledged that his trial counsel objected to the prosecutor's comment and the objection was sustained, but Appellant contended that trial counsel rendered ineffective assistance for failing additionally to request a curative jury instruction and that appellate counsel rendered ineffective assistance for failing to raise trial counsel's error. Id. at 41.

The Commonwealth countered that trial counsel properly hired and relied on the opinions of Dr. Tepper, who reviewed a majority of the records that counsel allegedly failed to present, and, following that review, did not recommend any additional testing. Commonwealth's post hearing brief at 2-3. The Commonwealth further perceived that the information contained in the "additional" records was nothing more than cumulative of information presented to the jury from other sources. Id. at 6 The Commonwealth

---

[11] In addition to raising these instances of trial counsel's alleged ineffectiveness, Appellant argued that appellate counsel erred in failing to argue trial counsel's deficient performance on direct appeal. Post-Hearing Memorandum of Law, filed 2/6/12 at 36-39.
[12] Appellant's counsel later explained that he chose not to take evidence on the improper closing argument issue during the evidentiary hearing, believing it unnecessary because the issue involved legal argument only. N.T. 2/13/12 at 7.

insisted that even if the jury had been presented with the opinions of the experts retained by Appellant at the PCRA stage, the "mild" impairment from which they believed Appellant to suffer would not have compelled a different mitigation/aggravation conclusion. Id. at 7-13. Similarly, the Commonwealth disputed the contention that ineffectiveness could be found based on counsel's tactics with regard to family testimony. Id. at 14-16.

Oral argument occurred before Judge Sarmina on February 13, 2012. Appellant immediately complained to the court that his counsel had not addressed the outstanding guilt phase issues, to which Appellant's counsel responded that he didn't include them in the post-hearing memorandum submitted on Appellant's behalf because the penalty phase issues addressed at the hearing were extensive and "it certainly did not seem the appropriate time to do so." N.T. 2/13/12 at 4-5. Appellant's counsel maintained that the issues "have not been waived," and indicated his intention to address them "at the appropriate time." Id. at 5. Before proceeding to hear argument on the penalty phase issues, Judge Sarmina again requested that the parties indicate what issues were before the court. Id. at 8.[13]

Following additional oral argument on June 22, 2012, Judge Sarmina stated on the record that Appellant had not met the prejudice prong required to achieve relief on Appellant's claim that trial counsel rendered ineffective assistance at the penalty phase of trial. N.T. 6/22/12 at 19. In so finding, Judge Sarmina indicated that she had credited the testimony of Dr. Gordon and had concluded "on balance the prejudice prong has not

_____

[13] The parties filed additional post-hearing submissions, but they appear to be in response to the court's request that they address how the court should reweigh the aggravating and mitigating evidence, and do not address what other issue remained outstanding. Post-hearing submissions filed 6/19/12.

been met." Id. Following this determination, Appellant's counsel again expressed his uncertainty regarding what other issues remained outstanding and requested further opportunity to brief the court. Id. at 22-23. Acknowledging the necessity of a formal ruling on whatever claims remained undecided, Judge Sarmina permitted additional briefing. Id. at 23-24.

On August 28, 2012, Appellant filed a "Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law," indicating that despite "thoroughly reviewing the record, it is not entirely clear which claims Judge Jones had previously ruled on." Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law filed 8/28/12 at 1. The motion then sought reconsideration of Judge Sarmina's determination that Appellant has not proven trial counsel's ineffectiveness with regard to the penalty phase claims and argued two additional guilt phase claims that: (1) the trial court failed to instruct the jury that "life imprisonment" means life without the possibility of parole and counsel was ineffective for failing to seek such an instruction, and (2) trial counsel was ineffective for failing to present expert testimony and additional evidence in support of heat of passion and voluntary intoxication defenses. Id. at 10, 14. Judge Sarmina heard final oral argument on January 3, 2013, and denied Appellant post-conviction relief. Appellant filed a timely appeal of the PCRA court's denial of relief.[14]

---

[14] Appellant complied with the court's directive to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, alerting the court to twenty four allegations of error. Pa.R.A.P. 1925(b) Statement filed 2/20/13. Judge Sarmina filed a responsive Rule 1925(a) opinion.

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." Commonwealth v. Hanible, 612 Pa. 183, 204, 30 A.3d 426, 438 (2011) (citing Commonwealth v. Colavita, 606 Pa. 1, 21, 993 A.2d 874, 886 (2010)). We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. Id. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. See Commonwealth v. Reid, ___ Pa. ___, 99 A.3d 470, 485 (2014). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a de novo standard of review to the PCRA court's legal conclusions." Commonwealth v. Roney, 622 Pa. 1, 16, 79 A.3d 595, 603 (2013). The denial of an appellant's request for discovery is reviewed for abuse of discretion. Id.

To be entitled to PCRA relief, a petitioner bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2), which include a violation of the Pennsylvania or United States Constitution or ineffectiveness of counsel, any one of which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i) and (ii). Further, the petitioner must show that the allegation of error has not been previously litigated or waived pursuant to Pa.C.S. § 9543(a)(3); See Commonwealth v. Baumhammers, 625 Pa. 354, 364, 92 A.3d 708, 714 (2014).

> An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on

the merits of the issue." A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."

Commonwealth v. Martin, 607 Pa. 165, 176, 5 A.3d 177, 183 (2010) (citing 42 Pa.C.S. § 9544(a)(2), (b)).

The majority of Appellant's claims assert that his trial and appellate counsel provided ineffective assistance. Counsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner. Commonwealth v. Fletcher, 604 Pa. 493, 515, 986 A.2d 759, 772 (2009); Commonwealth v. Natividad, 595 Pa. 188, 207, 938 A.2d 310, 321 (2007).[15] "With regard to 'reasonable basis,' the PCRA court 'does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis.'" Commonwealth v. Bardo, ___Pa.___, 105 A.3d 678, 684 (2014) (citing Roney, 622 Pa. at 17, 79 A.3d at 604)). "Where matters of strategy and tactics are concerned, '[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" Commonwealth v. Spotz, 624 Pa. 4, 33, 84 A.3d 294, 311-12 (2014) (citing

---

[15] "The three-factor approach utilized in Pennsylvania derives from our application in Commonwealth v. Pierce, 527 A.2d 973, 975 (Pa. 1987), of the 'performance and prejudice' test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Commonwealth v. Dennis, 597 Pa. 159, 174, 950 A.2d 945, 954 (2008).

<u>Colavita</u>, 606 Pa. at 21, 993 A.2d at 887). To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. <u>See</u> <u>Strickland</u>, 466 U.S. at 694; <u>Commonwealth v. Laird</u>, ___ Pa ___,.119 A.3d 972, 978 (2015); <u>Commonwealth v. Tedford</u>, 598 Pa. 639, 659, 960 A.2d 1, 12 (2008). Failure to establish any prong of the <u>Strickland</u>/<u>Pierce</u> test will defeat an ineffectiveness claim. <u>Commonwealth v. Walker</u>, 613 Pa. 601, 612, 36 A.3d 1, 7 (2011).

Because Appellant was represented by new counsel on direct appeal and that appeal predated <u>Commonwealth v. Grant</u>, 572 Pa. 48, 813 A.2d 726 (2002), Appellant was required to raise allegations of trial counsel's ineffectiveness at that time, on pain of waiver. <u>See</u> 42 Pa.C.S. § 9544(b); <u>Fletcher</u>, 604 Pa. at 515, 986 A.2d at 772-73; <u>Commonwealth v. Hubbard</u>, 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977).[16] Although Appellant did raise several allegations of trial counsel's ineffectiveness on direct appeal, the issues regarding trial counsel's performance that Appellant currently asks this court to decide were not among them. We note, however, that Appellant's January 25, 2002 amended PCRA petition included the following claim:

> To the extent that prior counsel failed to properly investigate and to make the objections and arguments raised throughout this petition, at trial, in post-trial motions and on direct appeal, counsel were ineffective, in violation of Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Pennsylvania Constitution.

---

[16] <u>Grant</u> held that claims of counsel's ineffectiveness generally should wait until collateral review, overruling the prior procedural rule announced in <u>Hubbard</u>, which required that ineffectiveness claims be raised as soon as an appellant had new counsel. <u>See</u> <u>Commonwealth v. Bridges</u>, 584 Pa. 589, 597, 886 A.2d 1127, 1132 (2005); <u>Commonwealth v. Edmiston</u>, 578 Pa. 284, 294-95, 851 A.2d 883, 889 (2004).

Amended PCRA Petition filed 1/25/02. Additionally, Appellant's brief to this Court attaches to each of the claims of trial counsel's ineffectiveness a layered claim that appellate counsel rendered ineffective assistance for failing to include those claims on direct appeal.

> Where claims of trial counsel ineffectiveness have already been, or could previously have been, litigated …the only way a petitioner can successfully mount a challenge to the effectiveness of counsel is to assert a "layered" claim of ineffectiveness, establishing first that appellate counsel was ineffective in failing to challenge the effectiveness of trial counsel, which requires as a threshold matter that trial counsel was ineffective in the first instance.

Commonwealth v. Dennis, 597 Pa. 159, 175, 950 A.2d 945, 954 (2008) (citation omitted). To prevail upon a layered ineffectiveness claim a petitioner must present argument on the three prongs of the Strickland/Pierce test as to each relevant layer of representation. Commonwealth v. Reaves, 592 Pa. 134, 147-48, 923 A.2d 1119, 1127-28 (2007).

Thus, Appellant may still be entitled to PCRA relief if he can demonstrate ineffectiveness as to both trial counsel and appellate counsel. The Commonwealth contends that Appellant has not accomplished this because his brief offers only bald assertions of appellate counsel's ineffectiveness which fail to adequately address all three Strickland/Pierce criteria as to those layered claims. Commonwealth's brief at 13-15 (citing Commonwealth v. Steele, 599 Pa. 341, 361, 961 A.2d 786, 797 (2008) for the proposition that "where an appellant fails to meaningfully discuss all three prongs of the ineffectiveness test, this Court is 'constrained to find such claims waived for lack of development.'").[17]

---

[17] The Commonwealth also faults Appellant for failing to cite to any affidavit or certification from appellate counsel, and disputes Appellant's claim that it is obligatory (continued…)

The Commonwealth acknowledges, however, that this Court has held that it may be appropriate to remand the case rather than deny relief where deficiencies in developing claims of appellate counsel ineffectiveness "mirror those in the PCRA pleadings." Id. at 15, n. 2 (citing Walker, 613 Pa. at 614, 36 A.3d at 8-9). Remand is unnecessary here, the Commonwealth avers, because even assuming Appellant's claims can be deemed to mirror those presented below, he has already had ample opportunity to develop and support them, and, in any event, his underlying claims are without merit. Id.

This Court has found that in cases where the arguable merit of the underlying claim of *trial* counsel's ineffectiveness has been established, remand may be warranted for the opportunity to correct a deficient pleading of the remaining two prongs of the Stickland/Pierce test regarding *appellate* counsel's ineffectiveness. Commonwealth v. Moore, 580 Pa. 279, 290, 860 A.2d 88, 94 (2004) (italics added). We have also concluded, however, that there is no need to remand a PCRA petition when the petitioner has *not* carried his Stickland/Pierce burden in relation to the underlying claim of trial counsel's ineffectiveness, "since even if the petitioner were able to craft a perfectly layered argument in support of his claim, the petitioner's claim would not entitle him to relief." Id., (citing Commonwealth v. Rush, 576 Pa. 3, 14, 838 A.2d 651, 657-58 (2003). Thus, we need not remand if Appellant has not met his burden of proving trial counsel's ineffectiveness. See also Reid, ___ Pa. at ___, 99 A.3d at 483 (where the

_____

(…continued)
upon appellate counsel to raise meritorious claims, asserting instead that it is well established that "appellate counsel may reasonably forego issues of arguable merit in order to focus on claims he believes are more likely to succeed." Commonwealth's brief at 13-14 (citing Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765-766, 145 L.Ed.2d 756 (2000); Smith v. Murray, 477 U.S. 527, 536[, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434] (1986).

Commonwealth's waiver objection is based solely on the inadequacy of Appellant's presentation of his claim of appellate counsel's ineffectiveness, we will address the claims on the merits, where appropriate).

With these standards in mind, we turn to the claims raised by Appellant.

**Claim 1.  Counsel was ineffective for failing to develop heat of passion, diminished capacity, and voluntary intoxication defenses to first-degree murder; appellate counsel was ineffective; and the lower court erred in summarily denying this claim without an evidentiary hearing**.

Before reaching the merits of this claim, we first address the Commonwealth's assertion that a portion of it has been waived.   To do so, we recognize the circuitous path the parties have traveled to reach this Court.   Although Appellant now argues that trial counsel should have developed each of the three defenses of heat of passion, diminished capacity, and voluntary intoxication, he did not originally request post-conviction relief on that particular ground.   Appellant's January 25, 2002, amended PCRA petition instead asserted as grounds for relief that:

> PETITIONER IS ENTITLED TO RELIEF FROM HIS CONVICTION AND SENTENCE BECAUSE TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE GUILT STAGE OF PETITIONER'S TRIAL BY FAILING TO PROPERLY CONSULT WITH PETITIONER PRIOR TO TRIAL, FAILING TO PERFORM AN ADEQUATE PRE-TRIAL INVESTIGATION, AND FAILING TO INVESTIGATE, PROCURE AND PRESENT EVIDENCE IN SUPPORT OF THE ONLY DEFENSE OFFERED TO THE CHARGE OF FIRST DEGREE MURDER - VOLUNTARY INTOXICATION.  AS A RESULT, PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 9, 13 AND 14 OF THE PENNSYLVANIA CONSTITUTION WERE VIOLATED.

Amended PCRA petition filed 1/25/02, Claim II at i-ii, 17 (capitalization in original).

In pertinent part, the amended PCRA petition supported this claim with detailed argument that, in light of trial counsel's decision to pursue a voluntary intoxication diminished capacity defense, counsel was ineffective in failing to obtain lay and expert testimony to support that defense. The only mention of trial counsel's failure to develop a mental deficit diminished capacity defense was a bald allegation that "in addition to his failure to present to the jury the overwhelming evidence of [Appellant's] diminished capacity due to his PCP use at the time of the offense, trial counsel also failed to investigate and present to the jury the readily available evidence of [Appellant's] mental deficiencies," id. at 27, and the amended PCRA petition did not assert or argue that trial counsel was ineffective for failing to develop a heat of passion defense.

The matter was pending before Judge Jones for nearly three more years before Appellant made any reference to trial counsel's failure to develop a heat of passion defense, and that reference came not in a court approved supplement to Appellant's PCRA petition, but in a "Response in Opposition to the Commonwealth's Supplemental Motion to Dismiss and Discovery Requests." Response filed 12/23/04 at 9.[18] There is no indication that Appellant requested that the PCRA court consider this document to be an amendment to Appellant's PCRA petition, and there is no indication that the court explicitly granted leave to amend.[19]

---

[18] Therein, Appellant asserted that "there was available evidence that this was a crime of passion that trial counsel failed to investigate and introduce." "Response in Opposition to the Commonwealth's Supplemental Motion to Dismiss and Discovery Requests" filed 12/23/04 at 9.

[19] The Rules of Criminal Procedure contemplate that amendments to pending PCRA petitions are to be "freely allowed to achieve substantial justice," Pa.R.Crim.P. 905(A), but Rule 905 amendments are not "self-authorizing" such that a petitioner may simply "amend" a pending petition with a supplemental pleading. See Commonwealth v. (continued…)

By the time Appellant raised the heat of passion issue in the "Response in Opposition to the Commonwealth's Supplemental Motion to Dismiss and Discovery Requests" in December, 2004, the PCRA court was embroiled in Appellant's Atkins claim, which was followed by argument in 2005 on the applicability of Grant, supra; a 2006 claim by Appellant (spurred by the disclosure of the "Sagel Lecture" notes) that the Commonwealth had violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (determining that race-based peremptory strikes violated equal protection); and a 2007 claim by Appellant that his conviction must be vacated because he did not receive a pre-trial competency hearing. Although Judge Jones ruled on the bulk of these issues,[20] Appellant's underlying request for post-conviction relief remained outstanding in 2009, when Judge Jones moved to the Federal bench and Judge Sarmina took his place.

Only after Judge Sarmina conducted the evidentiary hearing on Appellant's penalty phase mitigation claim did she turn to Appellant's unresolved guilt phase claims. N.T. 10/24/11-10/28/11; N.T. 6/22/12 at 22-23.[21] By that time, more than ten years had

---

(…continued)

Porter, 613 Pa. 510, 523-24, 35 A.3d 4, 12 (2012). "Rather, the Rule explicitly states that amendment is permitted only by direction or leave of the PCRA court." Id., 613 Pa. at 524, 35 A.3d at 12.

[20] Judge Jones allowed Appellant to withdraw the Atkins claim, denied relief on the Batson claim in 2007, and denied relief on the competency claim in 2008.

[21] During an October 15, 2010 hearing before Judge Sarmina, Appellant's counsel indicated to the court that Judge Jones had limited the evidentiary hearing to Appellant's penalty phase issues. N.T. 10/15/10 at 11. At the commencement of the October 24, 2011 proceedings before Judge Sarmina, Appellant's counsel indicated to the court that the hearing had been limited to the question of whether trial counsel was ineffective in failing to present adequate mental health evidence as it pertained to the mitigating factors set forth in 42 Pa.C.S. §§ 9711(e)(2) and (e)(3). N.T. 10/24/11 at 6-7.

passed since Appellant's Amended PCRA petition had been filed, and nearly eight years had passed since Appellant inserted allegations regarding counsel's failure to raise a heat of passion defense into his "Response in Opposition to the Commonwealth's Supplemental Motion to Dismiss and Discovery Requests." Further complicating matters, when Appellant filed his "Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law," he couched the heat of passion issue as a "claim that *had been previously submitted* but not adjudicated," without acknowledging that Judge Jones had never granted permission to supplement the PCRA petition to add the claim. Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law filed 8/28/12 at 1 (emphasis added).

On January 3, 2013, Judge Sarmina heard argument on the reconsideration of Appellant's penalty phase mitigation claim and additional guilt phase claims. Appellant briefly argued trial counsel's failure to present evidence in support of voluntary intoxication and mental deficit diminished capacity defenses but did not address counsel's failure to present a heat of passion defense. The Commonwealth did not comment on Appellant's failure to properly raise the heat of passion claim as grounds for post-conviction relief, neither was it addressed by Judge Sarmina, who decided at the conclusion of the hearing that trial counsel was not ineffective. N.T. 1/3/13 at 29-30. In so determining, Judge Sarmina first addressed trial counsel's failure to assail Appellant's ability to form the specific intent to kill, noting that "the evidence as a whole did, in fact, show that [Appellant] was capable of forming the specific intent to kill and showed very clearly that [Appellant] acted in a deliberate manner." Id. Additionally, Judge Sarmina determined that trial counsel was not obligated to seek additional expert opinions after Dr.

Tepper indicated his findings would not be helpful at the guilt phase of trial. Id. at 30.[22]

Thus, Judge Sarmina did not separately address mental deficit diminished capacity but generally found that the evidence demonstrated that Appellant was capable of forming the specific intent to kill and that trial counsel had reasonably retained and relied on Dr. Tepper, thus supporting a finding that trial counsel should not be found ineffective for failing to develop that defense.

With regard to the presentation of a heat of passion defense, Judge Sarmina concluded that trial counsel was not ineffective for failing to present psychiatric testimony in support of such a defense because Appellant could not make the requisite objective showing of sufficient legal provocation by the victim; thus, all the elements of the defense were not present. Id. at 30-31. Judge Sarmina further noted that even if Appellant could prove sufficient legal provocation, he failed to establish that the killing happened so suddenly as to preclude a cooling period. Id. Judge Sarmina also acknowledged that this Court had determined on direct appeal that there was no evidence of provocation.

---

[22] During the penalty phase of trial, Appellant complained he believed that his "records from the psychologist should have been brought forth before the end of this trial," and asserted that trial counsel rendered ineffective assistance for failing to do so. N.T. 2/17/96 at 3. Trial counsel explained in response that although he had retained Dr. Tepper to build potential guilt phases defenses, he decided not to call Dr. Tepper to testify during the guilt phase after "Dr. Tepper indicated that based on his examination he could not render an opinion sufficient to assist the defendant at the guilt phase," and further, that "[h]e indicated to me specifically that he could not and it would probably be harmful to the defendant if he were called to testify at that phase… .". N.T. 2/17/96 at 12-13. The Commonwealth also responded to Appellant's complaint, pointing out that the thrust of the defense at trial was that Appellant had acted under an overwhelmingly powerful first-time use of PCP, and that Dr. Tepper's testimony contradicted that. Id. at 15.

Id. (citing Mason, 559 Pa. at 511, 741 A.2d at 714.[23]  After setting forth her reasons for doing so on the record, Judge Sarmina denied reconsideration and dismissed Appellant's request for post-conviction relief in open court, indicating that the parties would receive no additional notice of the dismissal.   N.T. 1/3/13 at 32.

Following his timely appeal of Judge Sarmina's denial of relief, Appellant filed a Rule 1925(b) statement.   Adding to the developing procedural quagmire, however, despite arguing to Judge Sarmina in his "Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law" that trial counsel failed to develop each of the three discrete defenses of heat of passion, mental deficit diminished capacity and voluntary intoxication diminished capacity, Appellant's Rule 1925(b) statement alerted Judge Sarmina only that Appellant intended to claim on appeal "counsel failed to … obtain and elicit witness and expert testimony that would demonstrate petitioner was guilty of no more than third-degree murder."   Pa.R.A.P. 1925(b) statement at 2, Matter 5.   As a result, the response contained in Judge Sarmina's Rule 1925(a) opinion harkens back to Appellant's original claim that trial counsel failed to "investigate, procure and present evidence" in support of the defense of voluntary intoxication, Amended PCRA petition at 17, and addresses the reasons trial counsel should not be found ineffective for failing to develop that defense.

---

[23] As noted supra, this Court determined on direct appeal that the record did not support a heat of passion defense since Appellant claimed he was so intoxicated at the time of the stabbing that he could not remember whether words were exchanged which would give rise to a heat of passion defense, there was no evidence that the victim did anything immediately before the stabbing to provoke Appellant, and the victim's son testified that his mother was just lying on the bed when Appellant came into the room and began stabbing her.   Mason, 559 Pa. at 511, 741 A.2d at 714.

In doing so, Judge Sarmina initially opined that, to the extent Appellant asserts that trial counsel erred in failing to call lay witnesses Larry Lawhorn and Brian Mason in support of a voluntary intoxication defense,[24] such an allegation was previously litigated by this Court on direct appeal. Pa.R.A.P. 1925(a) Opinion filed 11/20/13 at 19-20 (citing Mason, 559 Pa. at 514, n. 6, 741 A.2d at 716 n. 6. Turning to whether trial counsel was ineffective for failing to call a mental health expert to explain the effects of PCP and opine that the drug prevented Appellant from forming the specific intent to kill,[25] Judge Sarmina reiterates her conclusion that trial counsel was not ineffective for failing to do so because (1) counsel acted appropriately by retaining Dr. Tepper, an experienced expert in forensic and clinical psychology, to evaluate Appellant for purposes of building potential guilt phase defenses; (2) counsel reasonably relied on Dr. Tepper's indication to counsel that based on his examination of Appellant he could not render an opinion to assist during the guilt phase and to do so might instead be harmful to the defense; and (3) counsel was not obligated to search for additional, different, expert opinions after receiving Dr. Tepper's opinion. Id. at 21-22 (citing Commonwealth v. Bracey, 568 Pa. 264, 278, 795 A.2d 935, 942-943 (2001) ("An attorney will not be deemed ineffective for choosing not to present expert testimony in support of a particular defense if an expert, after conducting a

---

[24] Appellant's amended PCRA petition argued that despite trial counsel's decision to pursue a guilt phase voluntary intoxication defense, trial counsel's lack of investigation prevented trial counsel from presenting lay witnesses Lawhorn and Mason to provide corroborating testimony that Appellant was in a drug induced state on the morning of the murder. Amended PCRA petition filed 1/25/02 at 20-21, 23-24.

[25] Appellant's amended PCRA petition argued that trial counsel failed to present expert testimony to explain the effects of PCP, to put Appellant's PCP use on the day of the offense into context, and to offer an opinion that the drug prevented Appellant from forming the specific intent to kill. Amended PCRA petition filed 1/25/02 at 24, 26.

reasonable evaluation, informed the attorney that he could not aid the defense(s) at issue.").[26]

Additionally, as part of a discussion of Appellant's Rule 1925(b) claim that the PCRA Court erred by limiting the scope of the evidentiary hearing by not permitting additional evidence to illustrate that Appellant was guilty of no more than third-degree murder, Judge Sarmina opined that with regard to the presentation of a mental deficit diminished capacity defense, trial counsel retained Dr. Tepper in an attempt to secure expert testimony at the guilt phase to support *any* defense to murder of the first-degree, including mental deficit diminished capacity. Dr. Tepper examined and evaluated Appellant for such potential guilt-phase defenses, including the mental deficit diminished capacity defense, but Dr. Tepper informed trial counsel that he could not testify in support any guilt-phase defenses; thus, trial counsel cannot be deemed ineffective for reasonably relying on Dr. Tepper's learned evaluation. Id. at 22, n. 19.[27]

---

[26] Judge Sarmina notes that her conclusion in this regard was not altered by Appellant's criticism that Dr. Tepper had not been able to properly evaluate Appellant in light of trial counsel's failure to provide the doctor with Appellant's school records indicating Appellant's low IQ, because Judge Sarmina deemed such information irrelevant to whether Dr. Tepper could have formed an opinion concerning the defense of voluntary intoxication. Id. at 22, n. 18.

[27] Also by way of addressing this claim, Judge Sarmina determined there was no genuine issue of material fact necessitating a hearing on whether trial counsel was ineffective for failing to present a heat of passion defense since, as determined by this Court on direct appeal, Appellant failed to make the requisite objective showing of sufficient legal provocation by the victim, thus counsel was not ineffective for failing to present psychiatric testimony to support a heat of passion defense where all elements of the defense were not present. Rule 1925(a) Opinion at 22, n. 19 (citing Commonwealth v. Watson, 523 Pa. 51, 565 A.2d 137 (1989); Commonwealth v. Sheppard, 648 A.2d 563, 566 (Pa. Super. 1994)).

Veering from the language of his Rule 1925(b) statement back to the more specific language of his "Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law," Appellant currently asserts to this Court that trial counsel was ineffective for failing to develop the defenses of heat of passion, mental deficit and voluntary intoxication diminished capacity. Appellant's brief at 10. [28] The Commonwealth asks that we find waived the portion of this claim pertaining to the heat of passion defense because it was not raised in Appellant's amended PCRA petition and Appellant failed to obtain leave of court to supplement the petition to include it. [29] Commonwealth's brief at 25 (citing Reid, ___ Pa. at ___, 99 A.3d at 484; Baumhammers, 625 Pa. at 390, 92 A.3d at 730-731; Commonwealth v. Elliott, 622 Pa. 236, 261, 80 A.3d 415, 430 (2013).[30] Appellant does not specifically disagree with the Commonwealth's

---

[28] While Appellant's Rule 1925(b) claim is more general than the issue he currently raises before this Court, the more specific claim contained in his brief may be viewed as subsidiary to the general Rule 1925(b) allegation of error if it were raised before the PCRA court. See Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court.").

[29] Pursuant to the Pennsylvania Rules of Criminal Procedure, "[e]ach ground relied upon in support of the relief requested shall be stated in the petition. Failure to state such a ground in the petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief." Pa.R.Crim.P. 902(B). As we noted above, amendments to pending PCRA petitions are to be "freely allowed to achieve substantial justice," Pa.R.Crim.P. 905(A), but such amendments are not "self-authorizing" with the simple filing of a "supplemental" pleading. See Porter, 613 Pa. at 523-24, 35 A.3d at 12. Instead, amendment is permitted only by direction or leave of the PCRA court." Id., 613 Pa. at 524, 35 A.3d at 12.

[30] In Reid, a PCRA petitioner sentenced to death for first-degree murder filed a series of supplemental PCRA petitions without seeking or receiving permission to do so, prompting the Commonwealth to urge this Court to find the issues contained therein waived. Reid, ___ Pa. ___, 99 A.3d at 483. The PCRA court's Rule 1925(a) opinion, however, addressed the issues, in light of "the Court's inclination to liberality in these proceedings." (continued…)

Id., ___ Pa. ___, 99 A.3d at 483.  This Court nonetheless found waived those claim that were raised for the first time in apparently unauthorized supplemental petitions, noting that:

> Notwithstanding the PCRA court's indulgence in addressing all of Appellant's claims, we agree that it was incumbent upon Appellant to identify where in the record the supplemental petitions were authorized and/or to reconstruct the record if such authorization was provided off the record.  Appellant has not done so.  This Court has condemned the unauthorized filing of supplements and amendments to PCRA petitions, and held that claims raised in such supplements are subject to waiver. See [ ]Elliott, 622 Pa. [at] 261, 80 A.3d [at] 430 [ ]; Roney, ___ Pa. [at] ___, 79 A.3d [at] 615–16 [ ]; [ ]Porter, 613 Pa. [at ___], 35 A.3d [at] 12 (2012).

Id., ___ Pa. ___, 99 A.3d at 484.

In Baumhammers, a PCRA petitioner sentenced to death for first-degree murder raised in his brief to this Court a claim that did not appear among the claims raised in his PCRA petition, prompting the Commonwealth to urge a finding of waiver. Baumhammers, 625 Pa. at 389, 92 A.3d at 729.  The petitioner reasoned that the claim was nonetheless preserved because it was "related to the previous claim" and was discussed in a pleading responsive to the Commonwealth's answer to the PCRA petition. Id.  Addressing the situation, this Court explained:

> Our criminal procedural rules reflect that the PCRA judge "may grant leave to amend ... a petition for post-conviction collateral relief at any time," and that amendment "shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A); see Commonwealth v. Williams, 573 Pa. 613, 633, 828 A.2d 981, 993 (2003) (noting that the criminal procedural rules contemplate a "liberal amendment" policy for PCRA petitions). Nevertheless, it is clear from the rule's text that leave to amend must be sought and obtained, and hence, amendments are not "self-authorizing." [ ] Porter, 613 Pa. [at] 523, 35 A.3d [at] 12 [ ].  Thus, for example, a petitioner may not "simply 'amend' a pending petition with a supplemental pleading." Id.  Rather, Rule 905 "explicitly states that amendment is permitted only by direction or leave of the PCRA Court." Id. at 523–24, 35 A.3d at 12; see also Williams, 573 Pa. at 625, 828 A.2d at 988 (indicating that the PCRA court retains discretion whether or not to grant a motion to amend a post-conviction petition).  It follows that petitioners may not automatically "amend" their PCRA petitions via responsive pleadings.

Id., 625 Pa. at 391, 92 A.3d at 730.  Noting that the petitioner did not seek leave to amend his PCRA petition to include the claim; the claim could not be construed as subsumed within the prior claim; the PCRA court did not treat Appellant's responsive pleading as a request for leave to amend; the record contained no discussion of such a

(continued…)

accusation that he did not obtain leave of court to amend his PCRA petition to include the heat of passion issue. Instead, addressing this issue as part of a larger challenge to the various "deficiencies" raised by the Commonwealth,[31] Appellant asserts that the PCRA court's failure to give notice of its intention to dismiss as required by Pennsylvania Rule of Criminal Procedure 909 denied him the opportunity to respond to the dismissal and

---

(…continued)
request; and the court did not address the new substantive contention in its opinion disposing of Appellant's PCRA claims, we found the claim waived, and further recognized that "waiver cannot be avoided solely by reference to Appellant's Concise Statement of Matters Complained of on Appeal, as such a statement, which is provided after the notice of appeal has already been filed, cannot operate to add new substantive claims that were not included in the PCRA petition itself." Id., 625 Pa. at 391-392, 92 A.3d at 731

In Elliott, a PCRA petitioner sentenced to death for first-degree murder raised in a supplemental brief to the PCRA court a claim that trial counsel was ineffective for failing to meet with him personally prior to trial or otherwise prepare for trial. This court found the claim waived, explaining:

> Because Elliott did not include in his PCRA petition the claim alleging trial counsel's ineffectiveness for failing to meet with him prior to trial, and did not obtain permission to amend his petition to include the same, the issue is waived. See Commonwealth v. Porter, 613 Pa. 510, 35 A.3d 4, 14 (2012) (holding that a PCRA petitioner may not raise new claims by merely supplementing a pending PCRA petition without court authorization because to do so would "wrongly subvert the time limitation and serial petition restrictions of the PCRA"); Pa.R.Crim.P. 902(B) (providing that the "[f]ailure to state such a ground [for relief] in the [PCRA] petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief").

Elliott, 622 Pa. at 261, 80 A.3d at 430.
[31] Appellant specifically references the Commonwealth's allegations that counsel neglected to substitute a certification or affidavit for appellate counsel after the original certification was withdrawn; that Dr. Mash's report was never filed; and that claims raised in supplements were waived for lack of affirmative permission from the lower court. Appellant's Reply brief filed 2/2/15 at 9 (citing Commonwealth's brief at 14, 21, 25, 30-31, 36, 63-64, 82).

remedy the deficiencies, requiring us to remand the matter.[32]   Appellant's reply brief at 7-10.

Appellant's argument is misplaced.  He did not receive notice of dismissal for failure to properly amend (and the accompanying opportunity to, presumably, seek to cure the deficiency by properly amending) because that was not the ground upon which Judge Sarmina dismissed the issue.   Instead, because of the procedural irregularities of this case, caused in part by Appellant's own counsel's indication to the court that the heat of passion issue had been properly pleaded and was awaiting determination, Judge Sarmina did not recognize that the issue had *not* been properly pleaded.  As such, she allowed both written and oral argument on it and addressed it on its merits, see N.T. 1/3/13 at 25-30, before determining that trial counsel was not ineffective for failing to pursue a heat of passion defense because it could not be proven in the absence of the necessary element of provocation.   Although the Commonwealth is correct that Appellant never received permission to amend his request for relief to include the heat of passion claim, the Commonwealth is partially responsible for Judge Sarmina's failure to recognize that fact, as the prosecutor not only failed to contradict Appellant's counsel's misstatements to the court, but also argued the issue at the January 3, 2013 hearing as if it had been properly pled.   Id. at 25.

Nevertheless, it is well-settled that claims raised outside of a court-authorized PCRA petition are subject to waiver regardless of whether the Commonwealth raises a

---

[32] Rule 909 requires the PCRA court to provide a capital petitioner with notice of the court's intent to dismiss, and further obliges the PCRA court to "state in the notice the reasons for the dismissal."   Pa.R.Crim.P. 909(B)(2)(a).   Once notice is given, the petitioner has 20 days in which to respond to attempt to cure the perceived deficiencies. Pa.R.Crim.P. 909(B)(2)(b).

timely and specific objection to them at the time they are raised.  Reid, ___ Pa. at ___, 99 A.3d at 484.  While the Commonwealth in Reid urged this Court to find waiver in that case, we did not hold that waiver was conditional upon the Commonwealth first objecting to unauthorized claims.  Instead, our decision depended only upon whether the petitioner had sought and received permission to amend his claims through a supplemental petition.  Finding that the petitioner in Reid had not sought the court's permission, we found his claims to be waived.

The petitioner bears the onus of informing the PCRA court that he or she seeks to add claims through an amended petition, and, in response, the court shall freely grant leave to amend where doing so achieves substantial justice consistent with the dictates of Pa.R.C.P. 905(A).  As described above, Appellant failed properly to seek the PCRA court's permission to amend his PCRA petition to include, for the first time, a layered ineffectiveness claim founded on the theory that trial counsel should have presented a diminished capacity "heat of passion" defense at trial.  Judge Sarmina entertained the newly-raised theory on its merits during the evidentiary hearing not as part of a policy to authorize and address all new claims at that time--she had, in fact, adopted no such policy[33]--but in apparent reliance upon the parties' taking up argument of the claim as if it had been properly pleaded at some point before Judge Jones.  We, therefore, find that

---

[33] At the outset of the January 3, 2013, PCRA hearing, Judge Sarmina clearly stated its purpose:  "We [are] here for reconsideration as well as for any additional claims that might not have been addressed by Judge Jones but which you thought should be addressed."  Id. at 2.  As Judge Jones could have neither "addressed" nor "failed to address" a "claim" that was never raised before him in the first place, Justice Sarmina's statement must be understood as contemplating only those claims already raised before the PCRA court.

Appellant has waived the heat of passion claim for failure to raise it in an authorized amended PCRA petition.

Even if, under the particular circumstances of this case, we were willing to view Judge Sarmina's opening statement at the January 3, 2013, evidentiary hearing as implicitly authorizing all new claims, including Appellant's heat of passion claim, so as to preclude the application of waiver doctrine herein, we would still find no error with Judge Sarmina's determination that trial counsel did not render ineffective assistance for failing to present lay and expert testimony in support of a "heat of passion" defense. We engage in merits review of this ineffective assistance claim first.

Applying the standard governing ineffectiveness claims under the PCRA, we begin by reviewing Appellant's assertion that this underlying claim is of arguable merit because there was evidence that Appellant acted out of heat of passion, and the presentation of such evidence, coupled with expert testimony, would have raised a reasonable doubt as to first-degree murder. Appellant's brief at 14. A heat of passion defense is a partial defense that addresses the element of intent and, if successfully argued, mitigates first-degree murder to third-degree murder. See Hutchinson, 611 Pa. at __, 25 A.3d at 314. It seeks to show that the defendant is guilty of voluntary manslaughter, not murder, by proving that at the time of the killing he or she was acting under a sudden and intense passion resulting from serious provocation by the victim. See 18 Pa.C.S. § 2503(a) ("[a] person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by … the individual killed.").

In order to successfully argue heat of passion, a defendant must prove (1) provocation on the part of the victim, (2) that a reasonable man who was confronted with the provoking events would become 'impassioned to the extent that his mind was incapable of cool reflection," and (3) that the defendant did not have sufficient cooling off time between the provocation and the killing.   See Commonwealth v. Busanet, 618 Pa. 1, 34-35, 54 A.3d 35, 55 (2012) (holding no evidence of provocation where the victim's threats against Appellant were made weeks prior to the shooting, thereby affording Appellant sufficient time to engage in cool reflection); Martin, 607 Pa. at 186, 5 A.3d at 189 ("In determining whether there was sufficient provocation to create uncontrollable passion in a reasonable person, we determine whether the killer actually acted in the heat of passion, whether the provocation lead directly to the slaying of the person responsible for the provocation, and whether the killer had sufficient cooling off time."); Commonwealth v. Williams, 602 Pa. 360, 391 n. 30, 980 A.2d 510, 529 n. 30 (2009) (a violent confrontation occurring two days before the murder would not serve to reduce the degree of guilt to manslaughter, since killings do not occur under the heat of passion where there was sufficient time for cooling between whatever provocation might have existed and the actual killings).   Further, "[i]f any element is missing, the provocation defense fails."   Martin, supra.   See also Commonwealth v. Sanchez, 623 Pa. 253, 314, 82 A.3d 943, 980 (2013) ("If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.").

Here, in declaring that there was arguable merit to a heat of passion defense, Appellant posits that the required provocation came in the form of the cumulative effect of

his "stormy relationship" with the victim and her revelations of infidelity. Appellant's brief at 14-15. Appellant asserts that such revelations are shown through (1) the declaration of Appellant's Uncle, Larry Lawhorn, that Appellant told Lawhorn that the victim boasted to Appellant of her infidelity while they were dating; and (2) Appellant's statement to Dr. Robert Sadoff that the victim told Appellant about her sexual exploits with other men during her relationship with Appellant. Id. at 15 (citing Declaration of Larry Lawhorn; N.T. 10/24/11, 31-32, Declaration of Dr. Robert Sadoff). Appellant does not specifically assert that, at the time of the killing, the victim's provocation caused him to act, nor does he address the implications of a cooling off period.

In response, the Commonwealth disputes the arguable merit to the pursuit of a heat of passion defense, reflecting that Appellant made no claim the victim did anything immediately prior to the killing to provoke him, let alone that such hypothetical provocation incited Appellant to a sudden and intense passion, and noting that instead, Appellant testified that he had no recollection of the killing or his state of mind when committing it. Commonwealth's brief at 26. In so arguing, the Commonwealth assails as inadmissible hearsay Appellant's Uncle's rendition of what Appellant allegedly told him the victim allegedly told Appellant, and further posits that regardless, revelations of infidelity are not sufficient provocation to support a heat of passion defense. Id. at 27 (citing Commonwealth v. Miller, 605 Pa. 1, 20-21, 987 A.2d 638, 649-51 (2009) (allegations of victim's past infidelities and flirtatiousness insufficient provocation); Watson, 523 Pa. at 61, 565 A.2d at 137 (awareness that victim, appellant's former long-time girlfriend, had a new boyfriend was not sufficient legal provocation)). The Commonwealth additionally asserts that expert testimony regarding Appellant's state of

mind would have become relevant only had Appellant been able to show sufficient legal provocation, which he could not, and further, that trial counsel cannot be faulted for failing to investigate Appellant's recollections of the circumstances of the crime, because Appellant told trial counsel that he had no such recollections. Id. at 28.

We find Appellant has failed to show there was arguable merit to a heat of passion defense, and has not presented a basis upon which trial counsel may be found to have acted unreasonably. To the extent that Appellant suggests a heat of passion defense may be based purely on provoking actions or statements that are not contemporaneous to the resulting "sudden and intense passion," Appellant is clearly mistaken, as the passage of time between provocation and the "passion" must be viewed as a cooling period, and killings will not be deemed to have occurred under the heat of passion where there was sufficient time for cooling between whatever provocation might have existed and the actual killings. See Williams, supra.[34]

To the extent Appellant's argument may be construed as suggesting there was a provoking event and/or statement immediately prior to the killing, such a suggestion is specious in light of Appellant's own testimony that he does not recall his actions from the night before the murder until after it was committed, much less remember what provoked

---

[34] With regard to Appellant's reliance on Commonwealth v. McCusker, 448 Pa. 382, 292 A.2d 286 (1972) for the proposition that "in making the objective determination as to what constitutes sufficient provocation, reliance may be placed upon the cumulative impact of a series of related events," Appellant's brief at 14 (emphasis omitted) (citing McCusker, 448 Pa. at 389, 292 A.2d at 290), Appellant neglects to mention that the series of related events in that case involved a prior revelation of infidelity coupled with two other provoking statements *made immediately prior to the killing*. McCusker, 448 Pa. at 389, 292 A.2d at 289-290.

those actions,[35] and the testimony of the victim's son that she did nothing prior to the attack and was merely lying on the bed. Further, revelations of infidelity have been deemed insufficient to constitute provocation for purposes of a heat of passion defense. See Miller, 605 Pa. at 22, 987 A.2d at 651 ("In numerous cases, evidence showing a history of minor disputes and allegations of past infidelity has been held not to be sufficiently provocative to reduce murder to manslaughter."); Commonwealth v. Dick, 602 Pa. 180, 187, 978 A.2d 956, 960 (2009) (A tumultuous relationship between appellant and his wife and their argument sometime prior to the incident was "clearly insufficient" to establish "heat of passion," and appellant did not prove arguable merit to the pursuit of a heat of passion defense).

For these reasons Appellant has failed to prove arguable merit to the pursuit of a heat of passion defense. Even if we were to presume such a defense has arguable merit, Appellant must also show that trial counsel's course of action lacked a reasonable basis, and he simply has not done so based on the omissions alleged. Appellant faults trial counsel for failing to develop accounts of Appellant's "long-term, intense and contentious" relationship with the victim, and specifically argues that counsel should have obtained and presented letters from the victim to Appellant expressing her love for him.

---

[35] Appellant's citation to Dr. Sadoff's findings do not alter our opinion in this regard. Although, upon initial review, Dr. Sadoff's opinion could be read to suggest that the victim said something to Appellant immediately prior to the murder to provoke him, since Dr. Sadoff's opinion was based in part on "Appellant's recitation of the facts," and since Appellant testified that he did not remember anything from the night before the murder until after it was committed, Appellant's recitation of the facts obviously could not include anything that happened during that time frame, including anything that may or may not have been said by the victim immediately before the crime, and thus Dr. Sadoff's findings cannot be viewed as suggesting that such a statement was made.

Appellant's brief at 16-17. It is unclear how such letters would be of any benefit to proving that the victim provoked Appellant prior to the attack, causing him to act out of sudden and intense passion. Also, because Appellant testified that he did not recall the events of the killing, he could point to no evidence supporting his claim that he acted in the heat of passion. Further, there was no evidence of provocation on the part of the victim immediately prior to the attack, and the letters Appellant faults trial counsel for failing to obtain do not provide such evidence. As such, it was not unreasonable for counsel to forgo attempting to persuade the jury that Appellant acted in the heat of passion.

We turn now to Appellant's claim that trial counsel was ineffective for failing to develop a diminished capacity defense, and we conclude that Appellant has failed to show trial counsel rendered ineffective assistance with regard to the presentation of such a defense. A diminished capacity defense is focused on negating the element of specific intent to kill and may be grounded in mental defect or voluntary intoxication. See Hutchinson, 611 Pa. at ___, 25 A.3d at 312; Commonwealth v. Spotz, 616 Pa. 164, 210, 47 A.3d 63, 90 (2012). "To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill." Spotz, 616 Pa. at 211, 47 A.3d at 90-91. A diminished capacity based on voluntary intoxication cannot be made out by mere evidence of intoxication, but rather requires evidence that demonstrates the defendant was intoxicated to such an extent he was unable to form the requisite intent. Commonwealth v. Spotz, 587 Pa. 1, 47, 896 A.2d 1191, 1218 (2006). "For a defendant who proves a diminished capacity defense, first-degree murder is mitigated to third-degree murder." Hutchinson, supra (citing

Commonwealth v. Saranchak, 581 Pa. 490, 866 A.2d 292, 299 (2005)). The factual circumstances under which a voluntary intoxication diminished capacity defense could be mounted are obviously different than those which would warrant a mental deficit diminished capacity defense. Nonetheless, Appellant addresses the defenses together for purposes of establishing that he has met the three Strickland/Pierce factors and showing that trial counsel rendered ineffective assistance.

Appellant initially asserts there exists arguable merit to the claim that trial counsel should have investigated and presented evidence to support a diminished capacity defense by involuntary intoxication or mental deficit. With respect to involuntary intoxication, Appellant argues, counsel knew Appellant was low-functioning mentally and struggled with substance abuse since his teen years. Appellant's brief at 11. This profile, when coupled with testimony offered by family members who viewed Appellant to appear "highly intoxicated" and "paranoid" on the evening in question, should have prompted counsel to investigate further into Appellant's medical and corrections history, which, Appellant asserts, would have provided additional evidence of his violent reactions to heavy drug use. Appellant concludes reasonable counsel in trial counsel's position would have then consulted an expert as to the intoxicating effects of marijuana and PCP on Appellant's mental state.

Contrary to Appellant's position, however, it is clear that trial counsel did undertake such a defense by presenting extensive testimony from Appellant, his mother, and his brother, Kevin, regarding Appellant's highly intoxicated state before the murder (fueled in part by his first-time use of PCP to the point where he blacked out completely and appeared to be hallucinating), and Appellant's dazed and unusual appearance after the

crime occurred. Moreover, he pursued the expert neuropsychological opinion of Doctor Tepper as to the likely effects of intoxication on Appellant, but he reasonably opted against using the unfavorable opinion Dr. Tepper offered. Therefore, though the record supports the position that there was arguable merit to investigating and presenting a diminished capacity-involuntary intoxication defense, it also shows that trial counsel did, in fact, investigate and present the claim. Whether trial counsel took a reasonable tack with respect to advancing this defense implicates the reasonable basis prong of this ineffectiveness claim, which we take up *infra.*

As for the arguable merit to Appellant's assertion that trial counsel should have pursued a diminished capacity-mental deficit defense, Appellant fails to establish that the record would have supported such a defense. Although the diminished capacity doctrine is well-recognized as a permissible defense to first-degree murder in the appropriate situation, this Court has recognized that the defense is an extremely limited one. See Commonwealth v. Taylor, 583 Pa. 170, 187, 876 A.2d 916, 926 (2005) (citing Commonwealth v. Travaglia, 541 Pa. 108, 123, n. 10, 661 A.2d 352, 359 n. 10 (1995)). Because the defense is directed exclusively at the negation of specific intent, for evidence to be admissible it must necessarily put into question the criminal defendant's very ability to form the intent to kill. Id. Thus, "[e]vidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished capacity defense. Furthermore, diagnosis with a personality disorder does not suffice to establish diminished capacity." Hutchinson, 611 Pa. at ___, 25 A.3d at 312 (citations and footnote omitted). Additionally, the evidence must provide insight as to the defendant's mental state at the time of the

offense, "the only relevant time for a diminished capacity defense." Commonwealth v. Spotz, 610 Pa. 17, 144, 18 A.3d 244, 319 (2011) (citing Commonwealth v. Rainey, 593 Pa. 67, 928 A.2d 215, 237 (2007) (requiring a defendant advancing a defense of diminished capacity based on mental defect to "establish [that he or she] had a mental defect at the time of [the] murder that affected his [or her] cognitive abilities of deliberation and premeditation necessary to formulate specific intent to kill.")).

Here, the only basis upon which Appellant suggests counsel was obligated to pursue a mental deficit diminished capacity defense was trial counsel's knowledge that Appellant was "low functioning," his IQ was "barely above the [intellectually disabled] level," he had "learning difficulties" as a child and, according to Appellant's uncle, suffered from a "nervous condition." Appellant's brief at 11-12. Even if true, these contentions do not suggest Appellant's cognitive abilities of deliberation and premeditation were so compromised by mental defect that he was unable to formulate the specific intent to kill, much less that he suffered from such mental deficit at the time of the stabbing. Further, any support the evidence of Appellant's low IQ and learning disabilities may have provided for a mental deficit diminished capacity defense was countered by the evidence that, at the time of the attack, Appellant appeared to be fully capable of deliberate and reasoned thought, as exhibited by Appellant's lucid attempt to negotiate access to the victim's house and his sober demeanor after turning himself in to police. Further, the arguable merit to a mental deficit diminished capacity defense was not suggested to counsel by his expert, as Dr. Tepper, with knowledge that Appellant suffered such diminished IQ and learning difficulties, was nevertheless of the opinion that Appellant was

indeed able to form a specific intent to kill.[36]   We conclude, therefore, that Appellant has failed to show there would have been arguable merit to the pursuit of a diminished capacity-mental deficit defense.   Commonwealth v. Philistin, 617 Pa. 358, 379, 53 A.3d 1, 12 (2012) ("[A]s appellant failed to show he lacked the ability to form a specific intent to kill, a diminished capacity defense was inapplicable, and trial counsel was not ineffective for failing to present such defense.").

Even assuming there would have been arguable merit to pursuing both a voluntary intoxication and a mental deficit diminished capacity defense, we nonetheless find Appellant has failed to show that trial counsel's course of action lacks a reasonable basis, thus Appellant has not met the second prong of the Strickland/Pierce test.   With regard to trial counsel's alleged failure to appropriately pursue these defenses, Appellant accuses trial counsel of failing to seek additional records, failing to interview additional family members to learn more about how Appellant reacted when on drugs, and failing to consult with an expert and provide the expert with such records and testimony. Appellant's brief at 12-13.

---

[36] Dr. Tepper testified he met with Appellant on two occasions, for a total of four to five hours, during which time Dr. Tepper collected background information from Appellant and performed intellectual and personality tests on him.   N.T. 2/16/96 at 72-73.   The tests revealed a verbal scale IQ of 71, and a non-verbal scale IQ of 73.   Dr. Tepper also reviewed police reports, school records, and drug and alcohol treatment records, and interviewed Appellant's mother.   Id. at 73.   Appellant and his mother reported to Dr. Tepper that Appellant suffered learning difficulties, behavioral problems, which were confirmed by the records Dr. Tepper reviewed.   Id. at 75-76.   Dr. Tepper testified at the PCRA hearing that in light of Appellant's actions near the time of the crime, Dr. Tepper could not opine that Appellant was unable to form the specific intent to kill, but instead he believed Appellant was "able to form certain intents, whether it's killing or getting to locations."   N.T. 10/25/11 at 190-91.

Appellant specifically faults trial counsel for failing to obtain records from the Albert Einstein Medical Center showing that Appellant overdosed on drugs as a teenager, and Philadelphia Prison System records confirming Appellant's heavy drug use and revealing "possible suicide attempts" and head trauma. Id. at 12. The Commonwealth counters that trial counsel reasonably pursued a voluntary intoxication defense by presenting testimony that Appellant used PCP for the first time the night before the stabbing, that during the early morning hours before the stabbing Appellant was mumbling and hallucinating (behavior which was markedly different from how he normally reacted when high), and that after the stabbing Appellant was extremely disoriented and remembered nothing of the previous hours' events. Commonwealth's brief at 16-17 (citing N.T. 2/12/96 at 155-167; 2/13/96 at 25-26, 30-36). The Commonwealth asserts that trial counsel properly relied on Appellant and his family to provide accurate background information, and, to the extent that they did not supply information about purported "suicide attempts" and "head trauma," counsel cannot be found incompetent for failing to uncover such information. Id. at 20. Further, the Commonwealth points, out, Appellant himself specifically denied being suicidal. Id. at 20 n.4 (citing N.T. 10/24/11, 58; 6/22/12, 17-18.

Appellant also faults trial counsel for failing to present the testimony of his brother Brian that Appellant had a longstanding drug problem and appeared high before the stabbing. He specifically asserts that Brian would have testified Appellant was a drug addict from the time he was a teenager, that Appellant hallucinated when he was high, and that Appellant looked high on the night of the murder. Appellant's brief at 13 (citing N.T. 10/26/11, 190; Declaration of Brian Mason [Appendix to Amended PCRA petition,

tab 4]).   The Commonwealth counters that because only Appellant's mother and uncle cooperated with trial counsel, and counsel was never informed that Brian Mason had any information that would have supported the defense, counsel cannot be deemed to have acted unreasonably in failing to call Brian Mason to testify.   Commonwealth's brief at 19 (citing N.T. 10/25/11 at 18; N.T. 10/26/11 at 202).   The Commonwealth further asserts that Brian Mason's testimony would have been cumulative.   Id. at 20.

Appellant lastly posits that "[p]rofessionally reasonable counsel who was in possession of this evidence would have consulted an expert with respect to diminished capacity/voluntary intoxication and provided the relevant information to the expert." Appellant's brief at 13.   Appellant observes that his current counsel was able to obtain an opinion from Dr. Barbara Mash, an expert in neuropharmacology, that the intoxicating effects of marijuana and PCP, combined with Appellant's underlying organic brain syndrome and history of cocaine dependence, prevented Appellant from forming a specific intent to kill.   Id. at 13-14 (citing Declaration of Dr. Barbara Mash attached as "Exhibit C" to Appellant's brief).

To the extent that the Commonwealth construes Appellant as faulting trial counsel for failing to call Dr. Mash as an expert witness, the Commonwealth insists such a claim has been waived by Appellant's failure to include it in a PCRA petition.   Commonwealth's brief at 21 (citing Reid, ___ Pa. at ___, 99 A.3d at 484; Baumhammers, 625 Pa. at 390, 92 A.3d at 729-730; Elliott, 622 Pa. at 261, 80 A.3d at 430).   Regardless, the Commonwealth posits, trial counsel cannot be deemed ineffective on this basis because counsel did, in fact, consult an expert, Dr. Tepper, who evaluated Appellant's history of drug and alcohol abuse, including his use of PCP, and the impact such abuse might have

had on Appellant's ability to control his behavior. Commonwealth's brief at 17 (citing N.T. 2/16/96 at, 76-80, 83-84).[37] The Commonwealth emphasizes that trial counsel was nonetheless unable to offer Dr. Tepper as a guilt phase witness because Dr. Tepper told trial counsel that "he could not render an opinion sufficient to assist ... defendant at the guilt phase" and "it would probably be harmful to ... defendant if he were called to testify at that phase." Id. at 17 (citing N.T. 2/17/96, 12-13); 22-23 (citing N.T. 10/25/11, 50).[38] The Commonwealth further notes Dr. Tepper himself testified, in a manner completely incompatible with a diminished capacity defense, that Appellant's actions near the time of the crime revealed that he was able to form an intent to kill. Id. at 23 (citing N.T. 10/25/11, 190-191).[39] The Commonwealth observes Appellant cites to nothing to indicate that Dr. Tepper's opinion in this regard would have changed had he reviewed any of the additional information Appellant faults counsel for failing to provide. Id.[40] Thus, the Commonwealth asserts, trial counsel appropriately relied upon Dr. Tepper's opinion

---

[37] Appellant discussed his longstanding drug and alcohol abuse with Dr. Tepper, including Appellant's consumption of alcohol and his use of marijuana, cocaine and PCP. N.T. 2/16/96 at 82-84.

[38] As noted above, during the penalty phase of trial, counsel explained that Dr. Tepper had indicated he could not provide helpful guilt phase testimony. Counsel then reiterated this during the PCRA hearing, when he testified that Dr. Tepper told him that he could not help during the guilt phase of trial. N.T. 2/17/96 at 12-13); N.T. 10/25/11 at 50.

[39] Dr. Tepper testified at the PCRA hearing that in light of Appellant's actions near the time of the crime, Dr. Tepper could not opine that Appellant was unable to form the specific intent to kill and instead agreed that Appellant was "able to form certain intents, whether it's killing or getting to locations." N.T. 10/25/11 at 190-91.

[40] In response to Appellant's suggestion that it was unreasonable for the PCRA court to credit trial counsel's explanation for why Dr. Tepper was not called to testify at the guilt phase, as it was not made in an adversarial proceeding, Appellant's brief at 21, the Commonwealth counters that Appellant does not challenge the accuracy of trial counsel's explanation and cites to trial counsel's testimony at the PCRA hearing confirming the statement made during the penalty phase. Commonwealth's brief at 23 (citing N.T. 10/25/11 at 50, 190-191).

and was not obligated to seek out additional experts in the hope that they would provide a more favorable opinion. Id. at 22 (citing Bracey, supra; Commonwealth v. Lewis, 560 Pa. 240, 244, 743 A.2d 907, 909 (2000)).

We conclude that because the information contained in the additional records cited by Appellant would have been merely cumulative of the evidence of Appellant's lifelong struggle with drugs, presented at trial through his own testimony and that of his mother and brother, Kevin, Appellant has failed to show that trial counsel's failure to obtain the additional records was unreasonable. See Hanible, 612 Pa. at 221, 30 A.3d at 449 (Trial counsel cannot be deemed ineffective for failing to present additional evidence cumulative of that already presented). Similarly, the proposed testimony from Brian Mason would have been cumulative of the evidence already presented. Additionally, to prevail on a claim that trial counsel was ineffective for failing to present a witness, the defendant must demonstrate (in addition to the existence of the witness and counsel's awareness of that witness) that the witness was willing and able to cooperate on behalf of the defendant; and that the proposed testimony was necessary to avoid prejudice to the defendant. Commonwealth v. Tharp, ___ Pa. ___, 101 A.3d 736, 757-58 (2014) Here, Brian Mason never told trial counsel that he observed Appellant on the morning before the crime, and counsel testified that only Appellant's mother and uncle cooperated with counsel's investigation. N.T. 10/25/11 at 18, 38; N.T. 10/26/11 at 202. Further, Brian's statements as to Appellant's history of drug addiction and his condition prior to the crime would only have served to corroborate the testimony already presented, and cannot be deemed necessary to avoid prejudice to Appellant.

Neither do we find that Appellant has proven that trial counsel acted unreasonably in retaining Dr. Tepper, but declining to call him as a guilt-phase witness in support of a diminished capacity defense, in light of Dr. Tepper's conclusion that Appellant was, indeed, capable of forming the intent to kill. See Commonwealth v. Whitney, 550 Pa. 618, 632-33, 708 A.2d 471, 478 (1998) (trial counsel reasonably decided not to elicit guilt phase testimony from the expert he had retained to evaluate the defendant, because the expert determined that the defendant failed to meet the criteria for diminished capacity and would have weakened that defense).

Appellant also asserts that he suffered prejudice as the result of trial counsel's course of action in this regard, alleging that had trial counsel conducted a reasonable investigation and provided the results to an appropriate expert, that expert could have testified that Appellant's "underlying cognitive impairments and cocaine dependence, together with his intoxicated state at the time of the offense" rendered Appellant incapable of forming specific intent to kill, prompting the jury to acquit Appellant of first-degree murder. Appellant's brief at 18-19. The Commonwealth disagrees, arguing that additional evidence attempting to prove that Appellant's purported mental deficit and intoxication prevented him from forming the specific intent to kill would not overcome in the minds of the jury the evidence introduced as to Appellant's actual demeanor before, during and after the stabbing, which showed that he did, in fact, commit the crime in a deliberate and purposeful manner. Commonwealth's brief at 24.

In light of our conclusion that there was no arguable merit to the pursuit of a mental deficit diminished capacity defense, our conclusion that trial counsel appropriately investigated and presented a voluntary intoxication defense, and the evidence of record

concerning Appellant's demeanor before, during, and after the commission of the crime that contradicted the assertion that he was unable to form the required specific intent, we find that Appellant has not shown that but for trial counsel's course of action, the outcome of this matter would have been different, thus Appellant has not established that he was prejudiced.

Appellant asserts that we should remand for an evidentiary hearing on the issue of trial counsels' failure to develop a mental deficit diminished capacity defense. In suggesting that a hearing is necessary, Appellant first perceives that it was unreasonable for Judge Sarmina to credit trial counsel's statement at the January 1, 2013 hearing, discussed supra, that Dr. Tepper was unable to support such a guilt phase defense, because, Appellant asserts, the statement was not made in the context of an adversarial proceeding. Appellant's brief at 20-21. Appellant did not complain of Judge Sarmina's reliance on trial counsel's explanation at that the time it occurred, however, nor did Appellant raise the allegation of error in his Rule 1925(b) statement. As such, it cannot now provide a basis for relief. See Pa.R.A.P. 302(a) (**"**Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Commonwealth v. Hairston, 624 Pa. 143, 170, 84 A.3d 657, 672 (2014) (citing Commonwealth v. Castillo, 585 Pa. 395, 888 A.2d 775, 780 (2005) ("Any issues not raised in a Pa.R.A.P. 1925(b) statement will be waived.")); Commonwealth v. Murray, 623 Pa. 506, 535, 83 A.3d 137, 155 (2013) (Allegation that the trial court violated notions of due process by partaking in an *ex parte*

communication waived under Pa.R.A.P. 302(a) due to failure to lodge an objection at the time the communication was revealed).

Appellant additionally asserts that remand for an evidentiary hearing is necessary because he raised material issues of fact as to trial counsel's failure to provide Dr. Tepper with Appellant's school records and psychiatric and family counseling records, and the PCRA court ignored trial counsel's failure to obtain evidence to independently support a mental deficit diminished capacity defense.   Appellant's brief at 21 (citing N.T. 10/25/11, 12-13).   Appellant has not proven the necessity of remand for an evidentiary hearing on this issue, however.   Judge Sarmina did not find credible Dr. Tepper's testimony that had he received the records he would have been persuaded to send petitioner for neuropsychological testing, and she was not persuaded that had Dr. Tepper been provided additional records he would have changed his opinion at trial that petitioner did "not exhibit any signs or symptoms indicative of an underlying major mental illness or disorder."

In conjunction with Appellant's assertion that trial counsel rendered ineffective assistance for failing to raise and/or properly support diminished capacity and heat of passion defenses, Appellant also argues appellate counsel's ineffectiveness as follows:

> Appellate counsel had no reasonable basis for failing to raise [trial counsel's failure to investigate and present evidence supporting a diminished capacity/voluntary intoxication or heat of passion/voluntary manslaughter defense] on direct appeal.   He could have made this claim as one sounding in trial counsel's ineffectiveness for failing to investigate and raise a meritorious defense.   For the reasons set out above, the claim would have been meritorious.   Moreover, counsel could have had no strategic reason for failing to raise this claim on appeal, as the raising of a meritorious claim was obligatory.   Appellant has also established prejudice.   Had counsel raised this claim on direct appeal, there is a reasonable probability that the outcome of the appeal would have been different.

Appellant's brief at 20.   Because Appellant has not demonstrated his entitlement to relief

on the underlying claim of trial counsel's ineffectiveness, however, his claim of appellate

counsel's ineffectiveness is necessarily defeated as well.   See Moore, 580 Pa. at 289, n.

3, 860 A.2d at 94, n.3.

**Claim 2.   Whether Mr. Mason is Entitled to a New Trial Because the Commonwealth Elicited Improper, Prejudicial Hearsay and Whether Counsel were Ineffective When They Did Not Object or Raise the Issue on Direct Appeal.**

Officer Terry Brown testified as a prosecution witness as Appellant's trial.   As

noted above, Officer Brown arrested Appellant on March 31, 1994 for assaulting the

victim.   The following exchange occurred at trial:

**PROSECUTION:**   What observations about [the victim's] demeanor did you make that led you to any particular conclusion about her state of mind?

**WITNESS:**   Well, she was --- she had like a frightened look on her face like she really didn't want us to stop or she did want us to stop, it was really hard to tell, but I knew something was wrong, at which time as they approached the driver's side of the wagon I jumped out of the wagon and I said to the female, Miss, are you alright.   She started to say yes.

**DEFENSE COUNSEL:**      Your Honor, objection.

**COURT:**      Overruled.

**WITNESS:**   She started to say yes and then the defendant, I noticed that the female had bruises on her forehead, she had one on her neck, she had one on her mouth, and at which time the defendant said that a bunch of girls had jumped her, at which time she snatched away from the defendant and said he did it.

**DEFENSE COUNSEL:**      Objection, Your Honor.

**THE COURT:**         Just a moment.   Overruled.

**PROSEUCTION:**   And she said what?

**WITNESS:** At which time she pointed to the defendant and she state to me he did it. I automatically placed the defendant under arrest. … I spoke with the female, asked her was she okay and I asked her if she wanted to press charges, at which time she was very unsure and I said, well, he's under arrest anyway for what I see and from what you stated, he's under arrest. She-

**PROSECUTION:** What -- go ahead.

**WITNESS:** At which time she says if you place him under arrest he's going to kill me.

NT 2/9/96, 63-64.[41] Appellant's trial counsel did not object to this final response, nor was the issue raised by appellate counsel via post-verdict motion or on direct appeal

Appellant now asserts to this Court:

As evident from the prosecutor's question preceding the impermissible hearsay, which was changed mid-sentence, the prosecutor knew that the hearsay was improper. The prosecutor asked, "What- go ahead." Evidently, his question was going to be "What [did she say]?" But, the prosecutor presumably feared that such a question would draw an objection and so he changed it to, ". . . go ahead."

Appellant's brief at 22. Appellant asserts that the prosecutor's question called for "highly improper and prejudicial hearsay, the statement did not fit any of the hearsay exceptions, and trial counsel erred in failing to object to it." Id. at 22-23.[42]

---

[41] Judge Jones later instructed the jury the evidence it heard "tending to prove that the defendant was arrested for an offense for which he is not on trial" was before it for the limited purpose of "tending to show motive, intent and malice." NT 2/14/96 at 122.

[42] Appellant does not address what constitutes hearsay. As this Court has explained:
"Hearsay, which is a statement made by someone other than the declarant while testifying at trial and is offered into evidence to prove the truth of the matter asserted, is normally inadmissible at trial." Commonwealth v. Carson, 590 Pa. 501, 913 A.2d 220, 254 (2006); See Pa.R.E. 801(c) & 802. Of course, out-of-court statements by an unavailable declarant may be admissible if they fit within one of several recognized hearsay exceptions, such as former testimony, a statement under belief of impending death, a statement against interest, or a statement of personal or family history.
(continued…)

Before addressing the merits of this claim we note that the Commonwealth has asserted that it has been waived for Appellant's failure to include it in his amended PCRA petition or any subsequent court approved amendment/supplement to that petition. Commonwealth's brief at 30-31 (citing Reid, ___ Pa. ___, 99 A.3d at 484; Baumhammers, 92 A.3d at 729-30; Elliott, 80 A.3d at 430).

A review of the record confirms that the claim was not included in Appellant's January 25, 2002 amended PCRA petition. Instead, it is raised in "Petitioner's Supplement and Response in Opposition to the Commonwealth's Motion to Dismiss and Reply in Support of his Motion for Relief pursuant to Atkins v. Virginia," filed on November 10, 2003. The supplement and response specifically asserted:

> Upon further investigation, Petitioner, through counsel and pursuant to Pa.R.Crim.P. 905(A) ("Amendment [of a post-conviction petition] shall be freely allowed to achieve substantial justice"), avers the following supplemental claims:
> …
> Claim XVII. MR. MASON IS ENTITLED TO A NEW TRIAL BECAUSE THE COMMONWEALTH IMPROPERLY ELICITED IMPROPER, PREJUDICIAL HEARSAY AND COUNSEL WERE INEFFECTIVE WHEN

---

(…continued)

See Pa.R.E. 804. In the alternative, out-of-court statements may be admissible because they are non-hearsay, in which case they are admissible for some relevant purpose other than to prove the truth of the matter asserted. See Commonwealth v. [Raymond] Johnson, 576 Pa. 23, 838 A.2d 663, 680 (2003) (defendant's statements threatening witness's family admissible as verbal acts, a form of non-hearsay, because evidence not offered to establish truth of matter asserted, but rather, to demonstrate fact of attempted influencing of witness); Commonwealth v. Puksar, 597 Pa. 240, 740 A.2d 219, 225 (1999) (statements by witness who overheard defendant and his brother (the victim) arguing were admissible as non-hearsay because not offered to prove truth of matter asserted, but rather to establish motive for killings).
Commonwealth v. Ali, 608 Pa. 71, 126-27, 10 A.3d 282, 315-316 (2010).

THEY DID NOT OBJECT OR RAISE THE ISSUE ON POST-VERDICT MOTIONS OR DIRECT APPEAL.

"Petitioner's Supplement and Response in Opposition to the Commonwealth's Motion to Dismiss and Reply in Support of his Motion for Relief pursuant to Atkins v. Virginia," filed 11/10/03 at 68, 79 (capitalization in original).[43]

Appellant does not point to the location in the record where permission to add this supplemental claim was granted by the PCRA court, and our review of the docket sheet and record reveal nothing to suggest Appellant received such permission.[44]   Although Judge Jones dealt with several of Appellant's claims, he did not specifically address this allegation, nor was it addressed by Judge Sarmina when she took up the case.   As we noted above, following the transition from one judge to the other, there was obviously confusion over what issues had been addressed by Judge Jones and what issues remained for Judge Sarmina's determination.   It is clear from the briefs and arguments presented by the parties, as well as the transcripts of the proceedings before Judge Sarmina, that the question of whether Judge Jones had granted Appellant permission to amend his PCRA petition to include this issue did not arise once the matter was transferred to Judge Sarmina.   It is also clear that the underlying ineffectiveness claim was not one of the "remaining" issues Appellant sought permission to argue to Judge Sarmina following the evidentiary hearing on the penalty phase mitigating evidence issue,

---

[43]  Like Appellant's current brief to this Court, the supplement and response asserted that the statement in question was hearsay, and did not fit any of the hearsay exceptions. "Petitioner's Supplement and Response in Opposition to the Commonwealth's Motion to Dismiss and Reply in Support of his Motion for Relief pursuant to Atkins v. Virginia," filed 11/10/03 at 79.

[44]  The docket sheet accompanying the certified record in this case titles the November 10, 2003 document a "Brief in Opposition to Motion for Dismissal."

and it is similarly clear that Judge Sarmina did not address the issue.[45] Thus, when Judge Sarmina dismissed Appellant's PCRA petition, this claim was not mentioned in any way.

Appellant does not dispute the Commonwealth's assertion that he failed to secure permission to amend his request for post-conviction relief to include this claim, but, he now complains that the PCRA court's failure to provide proper Rule 909 notice prevented him from curing certain deficiencies alleged by the Commonwealth, including the failure to secure permission to supplement his PCRA petition with additional claims. Appellant did not raise this alleged error before the PCRA court at the time his request for post-conviction relief was denied, nor did he include it in his Rule 1925(b) statement.[46] Instead, he waited until February 22, 2015 (nearly two years after his PCRA petition was denied) to include it in a reply brief to the Commonwealth's brief to this Court. Reply brief filed 2/2/15 at 9.

Because Appellant did not include the claim in a court-approved amendment to his PCRA petition, it was never decided by the PCRA court. Further, Appellant did not alert the PCRA court that the issue had been passed over until it was too late for the court to act to remedy the situation by allowing the amendment.[47] This claim has not been

---

[45] Unlike the heat of passion issue, Appellant did not address this claim to Judge Sarmina during the oral arguments that followed the evidentiary hearing.

[46] The Rule 1925(b) statement raises the underlying ineffectiveness claim itself, as if it had been addressed and denied by the PCRA court and is properly before this court for review. Pa.R.A.P. 1925(b) statement filed 2/20/13 at 4, claim 14.

[47] Inclusion of the issue in Appellant's Rule 1925(b) statement does not alter this circumstance. See Ali, 10 A.3d at 293 (A claim raised in a Rule 1925(b) statement could not undo trial-level waiver); Steiner v. Markel, 600 Pa. 515, 523, 968 A.2d 1253, 1257 (2009) ("[A] 1925(b) statement can therefore never be used to raise a claim in the (continued…)

preserved for determination by this Court.  <u>Reid</u> ___ Pa. at ___, 99 A.3d at 484;

<u>Baumhammers</u>, 625 Pa. at 390, 92 A.3d at 729-30; <u>Elliott</u>, 622 Pa. at 261, 80 A.3d at 430.

**Claim 3.  Whether Mr. Mason is Entitled to a New Trial Because the Commonwealth Exercised its Peremptory Challenges in a Gender-Discriminatory Manner and Whether Prior Counsel were Ineffective for Failing to Litigate This Issue.**

Appellant's brief to this Court asserts that because the Commonwealth "used its peremptory strikes in a gender discriminatory manner to exclude women from the jury," and "had no gender-neutral reason for striking these female prospective jurors," Appellant's equal protection was violated and he is entitled to a new trial.  Appellant's brief at 25 (citing <u>J.E.B. v. Alabama</u>, 511 U.S. 127 (1994)).[48]  Since Appellant's trial and

---

(…continued)

first instance."); <u>Commonwealth v. McMullen</u>, 599 Pa. 435, 452, 961 A.2d 842, 852 (2008) ("A claim which is waived before the trial court is not given life by raising it for the first time after an appeal has been taken.").

[48] <u>J.E.B.</u>, which extended the holding of <u>Batson</u>, <u>supra</u>, determined that "[i]ntentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly where ... the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women."  <u>J.E.B.</u> 511 U.S. at 130-31.  The defendant has the initial burden of demonstrating a <u>prima</u> <u>facie</u> case that the prosecutor discriminated against potential jurors on the basis of gender, and to do so must specifically identify:

> (1) the gender of all the venirepersons in the jury pool; (2) the gender of all venirepersons remaining after challenges for cause; (3) the gender of those removed by the prosecution; (4) the gender of the jurors who served; and (5) the gender of jurors acceptable to the Commonwealth who were stricken by the defense.

<u>Spotz</u>, 587 Pa. at 35-36, 896 A.2d at 1211 (citing <u>Commonwealth v. Aaron Jones</u>, 542 Pa. 464, 668 A.2d 491, 519 (1995)).

direct appeal counsel did not complain of this allegedly discriminatory use of peremptory strikes, Appellant couches his allegation as an ineffectiveness claim. Id.[49]

Appellant did not raise this allegation in his amended PCRA petition, but included it in his "Petitioner's Supplement and Response in Opposition to the Commonwealth's Motion to Dismiss and Reply in Support of his Motion for Relief pursuant to Atkins v. Virginia," filed on November 10, 2003. As with Appellant's previous issue, the Commonwealth again asserts that this allegation has been waived for failure to include it in a court approved supplement/amendment. Commonwealth's brief at 36 (citing Reid, ___ Pa. at ___, 99 A.3d at 484; Elliott, 622 Pa. at 261; 80 A.3d at 430).

Appellant does not point to the location in the record where the PCRA court granted him permission to supplement/amend his request for post-conviction relief to include this claim of gender discrimination in the Commonwealth's peremptory challenges. As with the prior issue he does not dispute that his request to amend his PCRA petition was never granted, and instead asserts via his February 2, 2015 reply brief that he was prevented from curing this deficiency by the PCRA court's failure to provide

---

[49] A petitioner raising a Batson/J..E.B. claim through an ineffectiveness of counsel challenge has an additional burden.

> Defaulted [Batson/J.E.B.] claims argued through the derivative guise of ineffectiveness are not, indeed cannot, be treated the same as properly preserved [Batson/J.E.B.] objections. See Commonwealth v. Uderra, 580 Pa. 492, 862 A.2d 74, 86 (2004). When there is no [Batson/J.E.B.] objection during jury selection, "a post-conviction petitioner may not rely on a prima facie case under [Batson/J.E.B.], but must prove actual, purposeful discrimination by a preponderance of the evidence ... in addition to all other requirements essential to overcome the waiver of the underlying claim." Id. at 87. In the absence of such a showing, the petitioner cannot meet the Strickland standard.

Commonwealth v. Sepulveda, 618 Pa. 262, 301-02, 55 A.3d 1108, 1132 (2012) (footnote omitted).

proper Rule 909 notice.   For the reasons expressed with regard to the previous issue, we find that this issue has not been preserved for our review.

**Claim 4.   Whether Appellant is Entitled to Relief from His Death Sentence Because Counsel was Ineffective at the Penalty Phase for Failing to Investigate, Develop, and Present Mitigating Evidence; Whether Appellate Counsel was Ineffective for Failing to Raise Trial Counsel's Ineffectiveness, All in Violation of the Sixth, Eighth, and Fourteenth Amendments.**

Appellant raised this issue in his January 25, 2002 amended PCRA petition, which asserted trial counsel's ineffectiveness for failing to investigate, develop and present mitigating evident of Appellant's mental health impairments and history of substance abuse at the penalty phase of trial, and correspondingly asserted that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness.   Amended PCRA petition filed 1/25/02 at ii-iii, 36, xi, 108.

A review of the records reveals that at the penalty phase hearing, Appellant's trial counsel pursued mitigating circumstances under 42 Pa.C.S. § 9711(e)(2)-(4) and (8), urging the jury to find that Appellant was under the influence of extreme mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, as well as asking them to consider his age at the time of the crime and any other evidence of mitigation concerning Appellant's character and record and the circumstances of the offense.   N.T. 2/16/96 at 31-36, 40.[50]   Trial counsel called witnesses in support of the

---

[50] A reading of this portion of the penalty phase transcript reveals that Appellant's accusation that "[c]ounsel did not know the statutory mitigating factors prior to commencement of the sentencing phase," Appellant's brief at 30, is blatantly specious.

mitigating circumstances, and incorporated all the evidence presented on Appellant's behalf during the guilt phase of trial.   Id.

Larry Lawhorn, Appellant's uncle, explained to the jury that Appellant suffered from difficulties from a young age, prompting Appellant's mother to seek educational and psychiatric help for him.   Id. at 43-45.   Mr. Lawhorn explained that although Appellant was a respectful person who was clearly crying out for help, "the systems failed him." Id. at 46.   Thelma Mason, Appellant's mother, testified that Appellant had problems concentrating and suffered from learning disabilities that caused him to repeat first grade. Mrs. Mason told the jury that Appellant, along with rest of the family, underwent counseling to determine what the problem was, but Appellant continued to have trouble through elementary school into junior high school.   Id. at 55-56.   Appellant was eventually enrolled in school for children with learning disabilities and behavior problems, which caused the other children in his neighborhood to tease him for being different.   Id. at 56-57.   Mrs. Mason further explained that Appellant eventually started doing drugs and getting in trouble with the law, and continued to do drugs even while in court ordered treatment.   Id. at 57-58.   Appellant's drug problems persisted, she told the jury, and he overdosed when he was 17 or 18, but even afterward he continued to battle addiction. Id. at 58-59.   Mrs. Mason confirmed that Appellant had no self-esteem.   Id. at 58-60.

In addition to calling lay witinesses to explain to the jury Appellant's limited mental capacity and the depth of his struggles with drug addiction, trial counsel also elicited the testimony of Dr. Tepper, who testified that he met with Appellant on two occasions, with each meeting lasting between two and two and a half hours, during which time he interviewed Appellant, collected background information, and performed intellectual and

personality tests. Id. at 72-73. Dr. Tepper explained that as part of his evaluation of Appellant, he interviewed Appellant' mother, and reviewed the police reports for the crime, Appellant's school records, and some drug and alcohol treatment records. Id. at 73. Dr. Tepper indicated that Appellant's full scale IQ is 71, with a verbal scale score of 71 and a nonverbal scale score of 73. Id. at 74. Appellant and his mother informed Dr. Tepper that Appellant suffered from learning problems, and Appellant's school records confirmed that Appellant had academic and behavioral problems beginning in kindergarten. Id. at 75. The personality testing, along with the interviews, suggested to Dr. Tepper that Appellant has long standing feeling of inadequacy and inferiority, low self-esteem, and difficulty expressing himself. Id. at 76. Dr. Tepper explained to the jury that such problems can cause the sufferer to turn to drugs and alcohol, and may account for the long standing report and record history of Appellant drug and alcohol issues. Id. at 76-77. Dr. Tepper explained that because Appellant cannot deal with his emotions or effectively express himself, he may resort to drugs and alcohol, and when he gets upset or angry he does not have other resources to deal with that anger in a controlled fashion. Id. at 77. Dr. Tepper further explained that because of Appellant's limited intellectual abilities and his low self-esteem, Appellant's ability to deal with problems and interact with other people is already reduced, causing him to react more impulsively and angrily. Id. at 79. When Appellant is upset, agitated or intoxicated, Dr. Tepper told the jury, Appellant is even less able to maintain control. Id. at 80. Dr. Tepper was aware of Appellant's long standing problems with drugs and alcohol, as Appellant reported to Dr. Tepper that he began experimenting with marijuana and anti-anxiety pills as a teenager, and later began using cocaine and PCP. Id. at 83.

In order to convince the jury that it should find aggravating circumstances, the Commonwealth asserted that Appellant committed the killing in the perpetration of a felony, that he had a significant history of felony convictions involving the use or threat of violence, and that he knowingly created a grave risk of death to another person in addition to the victim when committing the offense. 42 Pa.C.S. § 9711(d)(6)-(7), (9). The Commonwealth incorporated pertinent guilt phase testimony, including the testimony of the victim's mother as to Appellant's entry into her home and the presence of the victim's son, and the testimony of the victim's son as to where he was and what he observed, and also incorporated the stipulation as to Appellant's felony convictions. N.T. 2/16/96 at 41. At the close of the penalty phase of trial, the jury found two aggravating circumstances (that Appellant killed the victim while committing a felony, and that he had a significant history of felony convictions involving the use or threat of violence), but no mitigating circumstances.

Appellant's amended PCRA petition specifically faulted trial counsel for failing to investigate evidence of Appellant's childhood dysfunction and abuse and his mental health deficiencies, and for failing to prepare the penalty phase witnesses to testify. Amended PCRA petition filed 1/25/02 at 37, 41, 42. Although Judge Jones did not originally grant an evidentiary hearing in this issue, See Order filed 1/19/05, he later indicated that the hearing would encompass whether trial counsel rendered ineffective assistance for failing to investigate, develop, and present evidence of Appellant's mental health treatments and history of substance abuse. N.T. 11/16/07 at 3; N.T. 11/27/07 at 10. As noted above, Judge Jones was moved to the Federal bench before he was able to conduct the evidentiary hearing, however, and Judge Sarmina took his place. When

the evidentiary hearing eventually commenced on October 24, 2011, Appellant indicated to Judge Sarmina that its subject matter had been limited by Judge Jones "to the question of whether trial counsel was ineffective in failing to present … adequate mental health testimony and background as it pertains to the mitigators E2 and E3 [that Appellant was under the influence of extreme mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired]." N.T. 10/24/11 at 6-7.[51]

During the evidentiary hearing, Appellant presented expert testimony from Dr. Robert L. Sadoff, an expert in forensic psychiatry, Dr. Gerald Cooke, an expert in forensic and neuropsychology, Dr. Richard Restak, an expert in neurology; and Dr. Tepper, Appellant's trial expert. Attorney Thomas Moore, Appellant's trial counsel also testified, as did Attorney Gerald Stein, Appellant's direct appeal counsel. Appellant presented lay testimony from his mother, his uncle, Larry Lawhorn , and his brother, Brian Mason.

Following the evidentiary hearing, the parties submitted post-hearing briefs, and oral argument occurred on February 13, 2012, at the conclusion of which Judge Sarmina

---

[51] Although Appellant's PCRA counsel represented to Judge Sarmina that Judge Jones limited the evidentiary hearing in this regard, N.T. 10/24/11 at 6-7, Appellant now asserts to this Court that we should remand the matter for consideration of all mitigating evidence, unconstrained by such limitation, because Judge Sarmina erred in relying on counsel's representation. Appellant's Reply brief filed 2/2/15 at 3. Appellant did not raise this issue before Judge Sarmina in his February 6, 2012 post-hearing memorandum of law, in his June 19, 2012 supplemental post-hearing memorandum of law, during the June 22, 2012 oral argument, or in his August 28, 2012 motion for reconsideration. Neither did Appellant include this allegation in his Rule 1925(b) statement of matters complained of on appeal, thus it has not been addressed by Judge Sarmina. Further Appellant did not raise the issue in his original brief but instead waited until he filed his reply brief on February 2015 to seek remand. He is not entitled to relief on this allegation. Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b).

determined that Appellant had not proven that trial counsel was ineffective for failing to adequately present mitigating evidence. Appellant then filed a supplemental post-hearing memorandum of law, and finally, a motion for reconsideration of Judge Sarmina's February 13, 2012 denial of relief. Judge Sarmina denied reconsideration on January 3, 2013. Appellant appealed, and his Appellant's Rule 1925(b) statement of matters complained of on appeal alerted the court that Appellant intended to assert that trial counsel rendered ineffective assistance at the penalty phase of trial for failing to investigate, develop and present mitigating evidence of Appellant's "dysfunctional upbringing and mental health impairments and history of substance abuse, including evidence of intellectual disability, brain damage, childhood dysfunction, Dysthymia, attention-deficit/hyperactive disorder, and the psychiatric/psychological impact of drug abuse," and that appellate counsel was ineffective for failing to pursue these claims. Pa.R.A.P. 1925(b) statement, issue 6.

In addressing these allegations, Judge Sarmina acknowledged Appellant's insistence that trial counsel's failure to investigate Appellant's background prevented counsel from presenting to the jury the full extent and significance of Appellant's history of drug abuse and his mitigating mental impairments. Pa R.A.P. 1925(a) Opinion at 55 (citing Appellant's Post-Hearing Brief, filed 2/6/2012 at 3). In addressing whether Appellant has proven trial counsel ineffective in this regard, Judge Sarmina considered the burden imposed upon counsel with respect to the presentation of mitigation evidence, examined the evidence that trial counsel actually presented during the evidentiary hearing, and assessed whether counsel's course of action was unreasonable.

With regard to counsel's course of conduct, Judge Sarmina cited the United States Supreme Court's indication that "[c]ounsel for a capital defendant has a duty to 'conduct a thorough investigation of the defendant's background.'" Id. at 56 (citing Williams v. Taylor, 529 U.S. 362, 396 (2000)). Turning to the pronouncements of this Court, Judge Sarmina quoted the following discussion from Carson,:

> The key to our evaluation of counsel's investigation is not focused on whether counsel should have presented a mitigation case or specific evidence, but rather questions whether the investigation supporting counsel's decision not to present a particular mitigation case or evidence was reasonable. In evaluating the reasonableness of counsel's investigation, this Court must remember that counsel's decisions may depend heavily on the information that his client provides to him.

Rule 1925(a) opinion at 56 (citing Carson, 590 Pa. at 580, 913 A.2d at 266 (citations omitted)).

With regard to trial counsel's performance here, Judge Sarmina concluded that Appellant has not shown that trial counsel's course of action was unreasonable, thus Judge Sarmina opines that trial counsel did not render ineffective assistance and Appellant is not entitled to relief on this issue. To reach this conclusion, Judge Sarmina initially noted that trial counsel hired Dr. Tepper for purposes of both the guilt and penalty phases, and she acknowledges Dr. Tepper's testimony at the evidentiary hearing that as part of his evaluation he met first with Appellant and gathered background information from him January 1995, then met and gathered background information from Appellant's mother in February 1995. Id. (citing N.T. 10/25/11 at 95). Judge Sarmina acknowledges that following Dr. Tepper's interview with Appellant's mother, Dr. Tepper requested that trial counsel provide him with additional school records, mental health records, and drug treatment records. Id. (citing N.T. 10/25/11 at 100). Dr. Tepper then

interviewed Appellant for a second time and administered psychological testing in March, 1995. Id. (citing N.T. 10/25/11 at 95). Judge Sarmina notes that although Dr. Tepper did not receive all the records he requested, based on the records he did receive, the testing he performed, and the information provided by Appellant and his mother, Dr. Tepper was able to testify at the penalty phase hearing that Appellant was borderline intellectually disabled, that he had long-standing feelings of inferiority and problems with drug addiction, and that the cumulative effect of these issues compromised Appellant's ability to exercise control over his own behavior. Id. (citing N.T. 2/16/1996 at 74-80).

Judge Sarmina notes Appellant's current allegation that had trial counsel uncovered the records requested by Dr. Tepper, Dr. Tepper would have "recommended neurological testing, testing which ultimately revealed Mr. Mason's organic brain damage." Id. (citing Appellant's Post-Hearing Brief, filed 2/6/2012 at 13). She further acknowledges Dr. Tepper's statement during the evidentiary hearing that had he received "(1) records relevant to [Appellant's] intellectual functioning, (2) prison records from 1992, which indicated that [Appellant] suffered head trauma, and (3) Eagleville Hospital records from 1993 regarding [Appellant's] drug abuse[,]" he would have referred Appellant to a neuropsychologist for a neuropsychological evaluation to look into potential or possible brain dysfunction. Id. at 56-57 (citing N.T. 10/25/2011 at 125-45).

Judge Sarmina explains, however, that she did not credit Dr. Tepper's testimony that the receipt of such records would have persuaded him to refer Appellant to a neuropsychologist. Id. at 57. Specifically, Judge Sarmina reiterates that based on Dr. Tepper's evaluation of Appellant, and the information he received from the records provided and the interviews conducted, Dr. Tepper did not deem it necessary to order

neuropsychological testing and offered his opinion that Appellant did not exhibit any signs or symptoms indicative of an underlying major mental illness or disorder. Id. at 57 (citing N.T. 10/25/11 at 147); see also Letter from Dr. Tepper to trial counsel dated 3/28/95 at 4. Judge Sarmina opines that none of the additional records presented at the evidentiary hearing represented new information, i.e. information unknown to Dr. Tepper that would have altered the conclusion already reached. Rule 1925(a) Opinion at 57. Records which merely confirmed what Dr. Tepper already knew, could not, in Judge Sarmina's opinion, provide a persuasive reason for Dr. Tepper to change his opinion that Appellant did not exhibit any signs or symptoms indicative of an underlying major mental illness or disorder. Id. "[A]lthough Dr. Tepper may not have had the physical records in his possession, he had already reached the conclusions to which he would have been directed by this data." Id.

Specifically with regard to Dr. Tepper's assertion that he would have been alerted to a possible neuropsychological problem if he had had records relevant to Appellant's intellectual functioning and intelligence testing, Judge Sarmina concluded that the data included in the additional public school records would only have led Dr. Tepper to a conclusion that he had already reached: "that [Appellant] had been severely limited intellectually since he was a young child." Id. at 58   In so determining, Judge Sarmina specifically found that despite Dr. Tepper's indication that he learned from the additional public school records that Appellant had extremely low standardized test scores over a number of years that evidenced constant attention and concentration difficulties which might now be considered Attention Deficit Disorder and/or have been brain based, Dr. Tepper was already aware from his original testing and interviews that Appellant fell

within the range of borderline intellectual disability, and that Appellant did so poorly in school that he repeated first grade and was placed in a school for those with learning disabilities. Id. (citing N.T. 10/25/11 at 131-132, 148-149, 156-158).[52] Because the records pertaining to Appellant's intellectual function which trial counsel failed to provide to Dr. Tepper provided only cumulative information to that which he was already aware, the failure to provide such information does not support a finding that trial counsel rendered ineffective assistance in this regard. Id.

Neither was Judge Sarmina persuaded that trial counsel rendered ineffective assistance for failing to obtain prison records indicating that Appellant suffered some kind of head trauma. Id. at 59. Judge Sarmina points out that as part of Dr. Tepper's 1995 evaluation he had asked Appellant whether he had suffered any head injuries, but Appellant did not report any. Id. (citing N.T. 10/25/11 at 111, 177). Judge Sarmina posits that Appellant's failure to include the 1992 incidents in the history he relayed to Dr. Tepper suggests that Appellant did not consider them to be significant. Id. Dr. Sarmina further opines that it was reasonable for Dr. Tepper and trial counsel to rely on Appellant's representations of his history, thus Dr. Tepper did not ask trial counsel to search for records pertaining to unreported head injuries, and trial counsel cannot be faulted for failing to initiate such a search on his own. Id.

With regard to trial counsel's failure to provide Dr. Tepper with records pertaining to drug treatment Appellant received at Eagleville Hospital in 1993, and Dr. Tepper's

---

[52] Judge Sarmina additionally notes that during the evidentiary hearing, Dr. Tepper could not specify which records indicative of Appellant's low intelligence were in his possession at the time of trial, and which records were received thereafter. Id. at 58 (citing N.T. 10/25/11 at 150).

subsequent claim that had he reviewed such reports he would have recommended neuropsychological testing, Judge Sarmina acknowledges Dr. Tepper's indication that the records reflected that Appellant suffered from at least a ten year history of extensive drug use, Id. (citing N.T. 10/25/11 at 141-142), but Judge Sarmina further points out that this information was already known to Dr. Tepper as a result of the information provided by Appellant and his mother that Appellant began using cocaine and other drugs as a teenager, id. at 60 (citing N.T. 10/25/11 at 165), and that Appellant abused PCP, used nerve pills, and got high every day from December 1993 through March 1994, id. (citing N.T. 10/25/11 at 165-166). As such, Judge Sarmina finds incredible the notion that Dr. Tepper would have changed his opinion if he had reviewed this additional but cumulative information regarding Appellant's history of drug abuse. Id.

Judge Sarmina thus concludes that had Dr. Tepper been privy to the records introduced at the evidentiary hearing, Dr. Tepper would have been confronted with nearly the same information that he already had. Id. None of the information elicited during the evidentiary hearing revealed a previously unknown aspect of Appellant's life--it merely confirmed Dr. Tepper's prior findings to be substantially accurate and complete--that Appellant was a borderline intellectually disabled offender, who struggled academically throughout his life and abused serious drugs dating back to his teenage years. Id. Judge Sarmina observes that based on Dr. Tepper's accurate assessment of Appellant's condition and addictions, Dr. Tepper had reasonably concluded that there was no need to refer Appellant for neuropsychological testing. Id. Judge Sarmina concludes that as Dr. Tepper's analysis of Appellant was based on sufficient information, it was entirely reasonable for trial counsel to rely on Dr. Tepper's determination that

neuropsychological testing was unnecessary. Id. at 60 (citing Bracey, 795 A.2d at 942-43 ("[C]ounsel was not required to disregard the findings of his expert and continue to consult experts, at the expense of limited judicial resources, until he found one willing to testify that Appellant was organically brain damaged . . .").

In addition to finding that Appellant failed to prove the second prong of the Strickland/Pierce analysis, Judge Sarmina further determines that even assuming, arguendo, that trial counsels' decision not to send Appellant for a neuropsychological evaluation was entirely unreasonable, Appellant still failed to demonstrate that he was prejudiced by the absence of testimony that he suffered from organic brain damage. Id. at 61 n.30. Acknowledging the directive that to assess prejudice in the context of a claim of ineffective representation as to a penalty phase mitigation investigation, the court must "'consider the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the habeas proceeding — and reweigh it against the evidence in aggravation,'" Judge Sarmina notes that here, the strongest, most persuasive mitigation evidence available to Appellant was, in fact, presented during the penalty phase through Dr. Tepper's testimony that the combination of Appellant's low intelligence and use of drugs significantly impacted his ability to control his impulses. Id. (citing Sears v. Upton, 561 U.S. 945, 955-56, 130 S.Ct. 3259, 3266-67, 177 L.Ed.2d 1025 (2010); N.T. 2/16/1996 at 78-79). Judge Sarmina suggests that the fact that the jury did not find Appellant's lack of impulse control, borne out of drug use and low intelligence, to rise to the level of a mitigating circumstance indicates that other, less convincing evidence would not have persuaded the jurors to find a mitigating circumstance, and she reiterates that she had credited Dr. Barry Gordon's opinion that: (1) Appellant's ability to appreciate

the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired by his neuropsychological condition or substance abuse, and (2) that Appellant did not suffer from a mental or emotional disturbance so extreme that he could not control his behavior. Id. (citing N.T. 10/27/2011 at 38-39). Judge Sarmina observes that Dr. Gordon based his evaluation on the totality of Appellant's actions at the time of the murder, and that she specifically found Dr. Gordon's reasoning to be sound. Id. (citing N.T. 10/27/11 at 45-46).

Judge Sarmina thus concludes that the original evidence of mitigation presented during the penalty phase, and the additional evidence of mitigation presented during the post-conviction evidentiary hearing, would not have persuaded a jury to find a mitigating circumstance, thus petitioner was not prejudiced by the failure to present such evidence. Id.

Our relevant standard of review is well-settled:

In evaluating an ineffectiveness claim alleging counsel's failure to investigate and present mitigation evidence in a capital case, "we consider a number of factors, including the reasonableness of counsel's investigation, the mitigation evidence that was actually presented, and the additional or different mitigation evidence that could have been presented." [Commonwealth v. Lesko, 609 Pa. 128, __, 15 A.3d 345, 380 (2011)]; Commonwealth v. Collins, 585 Pa. 45, 888 A.2d 564, 580 (2005). None of the aforementioned factors is, by itself, dispositive, because even if counsel's investigation is deemed unreasonable, the defendant is not entitled to relief unless the defendant demonstrates that prejudice resulted from counsel's conduct. Id.

Tharp, ___ Pa. at ___, 101 A.3d at 764 (2014). Furthermore:

Strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. []Bridges, 584 Pa. at [ ---], 886 A.2d [at] 1132 [ ] (citing Commonwealth v. Fears, 575 Pa. 281, 836 A.2d 52, 72 (2003)). Our evaluation of counsel's performance is, however, highly deferential, and the reasonableness of counsel's decisions cannot be

based upon the distorting effects of hindsight. Id. Furthermore, "reasonableness in this context depends, in critical part, upon the information supplied by the defendant." Bridges, 886 A.2d at 1132 (citing, Commonwealth v. Peterkin, 511 Pa. 299, 513 A.2d 373, 383 (1986)).

Commonwealth v. Rega, 593 Pa. 659, 708, 933 A.2d 997, 1025-26 (2007). Finally:

> In making this determination, the PCRA court is "to develop a specific comparison of the mitigation case offered at trial with the credited evidence offered on post-conviction review...." Commonwealth v. Beasley, 600 Pa. 458, 967 A.2d 376, 391 (2009); Commonwealth v. Gibson, 597 Pa. 402, 951 A.2d 1110, 1123 (2008) ("Gibson I ") (same). In reviewing the PCRA court's determination, "we reweigh the evidence in aggravation against the totality of available mitigating evidence, which includes the evidence presented at the penalty hearing and the evidence that would have been presented had counsel conducted a proper investigation." Gibson II, 19 A.3d at 526; see also Lesko, 15 A.3d at 384–85 (emphasizing that Strickland prejudice in this context requires consideration of context of case, including gravity of aggravating circumstances and strength of mitigating circumstances found by jury).

Commonwealth v. Watkins, ___ Pa. ___,108 A.3d 692, 713 (2014) (per curiam).

The reasonableness of counsel's investigation into potentially mitigating evidence may depend upon the information provided by defendant, "and counsel cannot be deemed ineffective for not introducing information uniquely within the knowledge of the defendant and his family which is not supplied to counsel." See Commonwealth v. Williams, 577 Pa. 473, 485, 846 A.2d 105, 113 (2004) (citing Commonwealth v. Bond, 572 Pa. 588, 609-610, 819 A.2d 33, 45-46 (2002)). Nor may a determination of ineffective assistance of counsel be founded upon counsel's failure to present mitigating evidence that would have been cumulative of evidence presented at the penalty phase. Commonwealth v. Mitchell, ___ Pa. ___, 105 A.3d 1257, 1286 (2014) (refuting merit to argument that even more details of defendant's alcoholism would have persuaded jury to accept his diminished capacity defense).

In addition to denying relief on the grounds stated in footnote 51, supra, our comprehensive review of both the record and governing jurisprudence leads us to adopt the probing, well-reasoned opinion of Judge Sarmina discerning no merit to any of Appellant's ineffectiveness claims. Accordingly, Appellant's claim fails.

**Claim 5. Whether Mr. Mason is Entitled to a New Sentencing Hearing Because the Trial Court Impermissibly Curtailed the Questioning of Defense Psychologist Allan Tepper and Whether Counsel were Ineffective for Failing to Properly Litigate this Issue.**

During the penalty phase of trial, Dr. Tepper testified that Appellant suffered from personality and intellectual deficits, and was asked to explain to the jury the effect those deficits, combined with Appellant's long term drug use, would have on Appellant's ability to control his behavior. N.T. 2/16/96 at 79. Following Dr. Tepper's response, which indicated that Appellant's ability to control his behavior was limited by these factors, trial counsel inquired: "Is it possible that the defendant in a situation might be able to form the specific intent to kill while not being able to control his conduct?" Id. at 80. The Commonwealth objected, and Judge Jones sustained the objection. Id. Appellant now asserts before this Court that it was error to sustain the Commonwealth's objection to this question, and further that following the objection, his trial counsel should have argued to the court that the answer would properly be before the jury because it would have been permissible evidence in support of the statutory mitigating factor of substantially impaired capacity (Section 9711(e)(3)).[53] Id. Additionally, Appellant

---

[53] Appellant asserts that if allowed to answer the question, Dr. Tepper would have responded that "at the time of the killing, [Appellant] would have "been unable to conform his conduct to the requirements of the law." Appellant's brief at 56 (citing NT 2/16/96 at 80).

claims, appellate counsel rendered ineffective assistance for failing to raise trial counsel's error. Id. at 57.

As with the second and third issues raised by Appellant's brief to this Court, Appellant did not raise this allegation in his amended PCRA petition, but instead included it in his "Petitioner's Supplement and Response in Opposition to the Commonwealth's Motion to Dismiss and Reply in Support of his Motion for Relief pursuant to Atkins v. Virginia," filed on November 10, 2003. Also as with those previous issues, the Commonwealth asserts that this allegation has been waived for failure to include it in a court approved supplement/amendment. Commonwealth's brief at 36 (citing Reid, ___ Pa. at ___, 99 A.3d at 484; Elliott, 622 Pa. at 261, 80 A.3d at 430)).

Appellant does not point to the location in the record where the PCRA court granted him permission to supplement/amend his request for post-conviction relief to include this claim, and as with the prior issues he does not dispute that he did not obtain permission to amend his PCRA petition, but instead asserts via his February 2, 2015 reply brief that he was prevented from curing this deficiency by the PCRA court's failure to provide proper Rule 909 notice. For the reasons expressed with regard to the previous issues, we find that this issue has not been preserved for our review.

**Claim 6. Whether the Trial Court's Failure to Instruct the Jury that "Life Imprisonment" Means Life Without Possibility of Parole Violated Appellant's Rights Under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Whether Trial Counsel was Ineffective for Failing to Request the Instruction and Appellate Counsel was Ineffective for Failing to Raise the Issue and Prior Counsel's Ineffectiveness**.

Appellant presented this issue in his amended PCRA petition, which argued in pertinent part that such a penalty phase instruction was required under Simmons v. South

Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed. 133 (1994), because Appellant's future dangerousness had been put at issue by (1) the introduction during the guilt phase of trial evidence of Appellant's prior assault on the victim and his criminal history, (2) the prosecutor's statement during his guilt phase closing argument that the evidence showed that Appellant had "occasions of violence," and (3) the statement in the prosecutor's penalty phase closing argument that Appellant had a "history of violence." Amended PCRA petition filed 1/25/02 at 59, 61 (citing N.T. 2/9/96 at 59-66, 92-99; N.T. 2/14/96 at 97, N.T. 2/16/96 at 110, 112).[54] Appellant reiterated these claims in his "Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law," which additionally argued that on cross-examination of Dr. Tepper, the prosecution elicited testimony that Appellant was "someone, who when angry, can and might respond with violence," and asked if Appellant "might become very violent" and "respond with violence." "Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law" filed 8/28/12 at 10-11.

---

[54] In Simmons, a plurality of the United States Supreme Court held that "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." Simmons, 512 U.S. at 156, 114 S.Ct. at 2190.

> This Court considered the proper scope of Simmons in Commonwealth v. Speight, 544 Pa. 451, 677 A.2d 317 (1996), cert. denied, 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997). There, the defendant argued that his trial counsel had been ineffective for failing to request a jury instruction that a life sentence means that he must spend his natural life in prison without the possibility of parole after the jury had asked the trial court for the definition of a life sentence. We held that under Simmons, a jury must be informed that life means life without the possibility of parole only when the prosecutor injects concerns of the defendant's future dangerousness into the case. In Speight, the prosecutor had not made the defendant's future dangerousness an issue; therefore, no Simmons instruction was required.

Commonwealth v. May, 551 Pa. 286, 291, 710 A.2d 44, 47 (1998).

Oral argument on this issue was conducted before Judge Sarmina on January 3, 2013. Judge Sarmina denied Appellant relief on the issue based on this Court's determination in Commonwealth v. Fisher, 559 Pa. 558, 741 A.2d 1234 (1999). N.T. 1/3/13 at 28.[55]

Judge Sarmina's Rule 1925(a) opinion addresses the three instances alleged to put Appellant's "future dangerousness" at issue, Rule 1925(a) opinion at 36 (citing N.T. 2/14/96 at 97; 2/16/96 at 110, 112), and explains that at the time of Appellant's trial, then-controlling law required that trial courts provide a Simmons instruction only when the defendant's "future dangerousness" was "expressly implicated." Id.[56]

---

[55] The appellant in Fisher asserted that the trial court erred in refusing to permit defense counsel to argue, pursuant to Simmons "that a sentence of 'life imprisonment' in Pennsylvania means that Appellant would spend the rest of his life in prison without the possibility of parole" after the prosecutor's closing argument (1) quoted from a prison psychological evaluation report that indicated that "[s]adistic and hostile impulses are suspected with rigid personality features and a potential for explosive action," and (2) queried "I wonder if after tomorrow he'll remain a good guy in prison when it no longer matters? It won't do him any good after tomorrow." Fisher, 559 Pa. at 577-578, 741 A.2d at 1243-1244. The appellant argued that "the inference most likely to be drawn" from these statements was that he "posed, poses and will continue to pose an explosive and dangerous threat to persons with whom he interacts in the future," but this Court concluded that these two instances "did not impermissibly raise the issue of Appellant's future dangerousness. Rather, the prosecutor's comments were a fair response to the evidence of good character presented in mitigation by Appellant," and reiterated that "instructions detailing the character of a life sentence are not required where future dangerousness is not expressly implicated." Id., 559 Pa. at 578, 741 A.2d at 1244.

[56] Judge Sarmina acknowledges that the U.S. Supreme Court has since revisited the degree of evidence required to trigger a Simmons instruction in Kelly v. South Carolina, 534 U.S. 246, 122 S.Ct 726, 151 L.Ed.2d 670 (2002), which found that introducing evidence, which only bore "a tendency" to prove dangerousness in the future raised the specter of a defendant's "future dangerousness.'" Rule 1925(a) opinion at 36, n.23 (citing Kelly, 534 U.S. at 253-254)). She further notes that this Court clarified, however, that the expanded definition of "future dangerousness articulated in Kelly did not apply retroactively, and attorneys who had failed to request a Simmons instruction based on the (continued…)

Judge Sarmina opines that references to a defendant's violent past are insufficient to expressly implicate "future dangerousness," and unless the prosecution explicitly connected a defendant's prior conduct with the prospect of future harm, a <u>Simmons</u> instruction was not implicated. <u>Id.</u> at 37 (citing <u>Carson</u>, 590 Pa. at592, 913 A.2d at 273; <u>Spotz</u>, 587 Pa. at 88, 896 A.2d at 1243)). Here, she concludes, the references to Appellant's violent past were insufficient to expressly implicate "future dangerousness," thus trial counsel did not render ineffective assistance for failing to request a <u>Simmons</u> instruction. <u>Id.</u> at 37-38. Since trial counsel was not ineffective, Appellant cannot show that appellate counsel was ineffective. <u>Id.</u> at 38.[57]

Appellant's argument to this Court reiterates the claims raised in his Amended PCRA petition and the claim regarding Dr. Tepper's cross-examination first asserted in his "Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law." Appellant's brief at 58-62.[58]

The trial transcript shows that the contested testimony of Dr. Tepper was part of a larger line of the prosecution's cross-examination which sought to impeach Dr. Tepper's medical impression that Appellant's difficulty with expressing his emotions played a role

---

(…continued)
new standard announced in <u>Kelly</u> could not be deemed ineffective for not having done so. <u>Id.</u> (citing <u>Spotz</u>, 587 Pa. at 92-93, 896 A.2d at 1245-1246). Thus, Judge Sarmina concluded, "[c]ounsel's stewardship must be judged under the existing law at the time of trial and counsel cannot be deemed ineffective for failing to predict future developments or changes in the law." <u>Id.</u>

[57] Judge Sarmina's Rule 1925(a) opinion does not address Appellant's assertion regarding the cross-examination of Dr. Tepper that was raised for the first time in his "Motion for Reconsideration and Supplemental Post-Hearing Memorandum of Law."

[58] As discussed above, to the extent that Appellant argues an issue that was not included in his PCRA petition, and for which he was not granted permission to amend, the issue has been waived.

in his past difficulties with controlling violent thoughts and impulses. Specifically, the prosecutor read from Dr. Tepper's report containing the doctor's opinion that Appellant's substance abuse was part of an attempt to control his unpleasant thoughts and emotions, but he nevertheless, despite these attempts, "possesses somewhat brittle and ineffectual psychological defenses and thus under more anxiety provoking situations his underlying thoughts and impulses may come through into consciousness in a less modulated or controlled fashion." N.T. at 86. The following testimony was then elicited:

> **PROSECUTION:** Is that to say that if someone makes him angry he might become very violent?
>
> **WITNESS:** Simplistically, yes. I mean it's also trying to say that he might because of the -- the last sentence that you did not finish with, that because of some of the underlying feelings he certainly may become either angry or more violent if he's pushed.
>
> **PROSECUTION:** I am somewhat of a simple person, so I'm going to ask you, is that another way of saying that when he becomes angry, he can respond with violence?
>
> **WITNESS:** Yes.
>
> **PROSECUTION:** Now, then you indicated he had trouble expressing himself at one point in time in your testimony, I'm not going to your report now, that he had trouble expressing himself.
>
> **WITNESS:** I stated that because of the lower verbal skills he has more difficulty talking about working through problems or feelings.
>
> **PROSECUTION:** Do verbal skills also include writing skills, writing one's feelings out?

N.T. at 86-87. The prosecution then asked Dr. Tepper to read several letters Appellant had sent to Iona Jeffries and to offer his opinion as to whether they reflected a difficulty with expressing personal feelings. The doctor opined that the letters contained thoughts

and feelings and were articulate enough to allow the reader to "get a sense of what they are trying to convey." N.T. at 87-88, 94-95.

Neither Dr. Tepper's report nor the line of questioning based upon it suggested that Appellant posed a future danger. Though written in the present tense and related to the jury verbatim, Dr. Tepper's report represented an assessment based on Appellant's case history and made no reference to future behavior. Moreover, the context in which the report was discussed involved the past as well, for the prosecution's focus was Appellant's state of mind around the time he killed Iona Jeffries, as is evidenced by the prosecution's attempt to show through Appellant's letters written to Jeffries that he possessed the ability to control his emotions and express his feelings at the critical time. Where Appellant's future dangerousness was not implicated by the cross-examination of Dr. Tepper, the PCRA court correctly rejected Appellant's layered claim of ineffective assistance of prior counsel for failing to request a Simmons instruction. See Spotz, 610 Pa. at 111, 18 A.3d at 299-300 (rejecting ineffectiveness claim for failing to request a Simmons instruction to which client was not entitled).

Appellant also contends the prosecution implied in its penalty phase summation that Appellant possessed the propensity to commit violent acts and would continue to have such propensity in the future. This argument is based on references to Appellant's "history of violence," N.T. 2/16/96 at 112, and argument that "this person [Appellant] acts with violence and . . . this killing was a further manifestation of how he responds to acts and stimuli and his environment and when he gets angry or when he wants something." N.T. 2/16/96 at 110. Both challenged excerpts, however, implicate past conduct generally ("history of violence") and specifically (the killing was a manifestation of how

Appellant acts with violence and how he responds to stimuli when he gets angry), and did not refer to future dangerousness. As noted above, Appellant's trial pre-dated our decision in Kelly, which prospectively expanded the scope of commentary that implicates future dangerousness. Our decisional law relative to future dangerousness claims at the time of Appellant's trial stated that instructions as to what the term "life sentence" means "are not required where future dangerousness is not expressly implicated." See, e.g., Commonwealth v. King, 554 Pa. 331, 363, 721 A.2d 763, 779 (1998). As "[a]n attorney cannot be deemed ineffective for failing to anticipate a change or development in the law," Carson, 590 Pa. at 593, 913 A.2d at 274, Appellant's present ineffectiveness claim fails.

**Claim 7.** **Whether Under Atkins v. Virginia, Appellant is Ineligible for the Death Penalty; Whether the PCRA Court Erred in Permitting Appellant, Over Counsel's Objection, to "Waive" this Claim.**

While Appellant's January 25, 2002 amended PCRA petition was pending before Judge Jones, the United States Supreme Court decided Atkins on June 20, 2002.[59] On October 8, 2002, Appellant filed a motion for immediate re-sentencing to life imprisonment pursuant to Atkins, based on Dr. Tepper's testimony at trial, which Appellant asserts was neither contested nor refuted by the Commonwealth, which established that an IQ between 70 and 79 on the Wechsler IQ test is classified as borderline intellectually disabled, and Appellant's overall score was 71, placing him in that range. Motion filed 10/8/02. Simultaneously, Appellant sought permission to "supplement and amend" his January 25, 2002 amended PCRA petition to include a claim

---

[59] Broadly speaking, Atkins held that the Eighth Amendment's prohibition on cruel and unusual punishment bars the execution of intellectually disabled offenders. Atkins, 536 U.S. at 321, 122 S.Ct. at 2252.

that he was entitled to post-conviction relief pursuant to Atkins because he had adduced "considerable evidence regarding his limited mental capacity" during the penalty phase of trial, including Dr. Tepper's testimony that Appellant was "borderline [intellectually disabled]." Supplemental Amended PCRA at II. 5., n. 2.[60] Judge Jones granted Appellant's request to supplement his PCRA petition to add this claim. N.T. 10/8/02 at 2.

On March 6, 2003, the Commonwealth filed a response to Appellant's motion and request to supplement and amended his PCRA petition, asserting that the issue raised was legislative in nature and legislative action was currently pending; that Appellant's assertion that the Commonwealth must affirmatively prove lack of intellectual disability is frivolous; and that Appellant's claim of intellectual disability failed because his own expert testified that he is not intellectually disabled. Appellant replied, and the Commonwealth

---

[60] Appellant's supplemental amended petition asserted that the PCRA court had jurisdiction to hear the Atkins claim under Section 9545(b)(1)(iii) (pertaining to the assertion of a constitutional right that was recognized after the expiration of the PCRA's one year time period filing and held to apply retroactively), Supplemental Amended Petition at III. 21, suggesting that Appellant believed that in order for the court to have jurisdiction over the supplemental amended petition, the petition had to fall under an exception to the PCRA's time requirements. If this were the case, Section 9545(b)(1(iii) would not operate to confer jurisdiction, however, because the supplemental amended petition was clearly filed more than 60 days after Atkins was decided, and would thus run afoul of Section 9545(b)(2) ("Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.") Perhaps because Appellant's decision to withdraw the Atkins claim removed the issue from the court's focus, neither Judge Jones nor the Commonwealth commented on Appellant's citation to Section 9545(b)(1)(iii) or the necessity of meeting an exception to the time bar. Regardless, this Court has previously indicated that an amendment to a pending, timely filed PCRA petition, is not independently subject to the PCRA's time limitations. Commonwealth v. Flanagan, 578 Pa. 587, 604-605, 854 A.2d 489, 499 (2004). Flanagan also opined that "PCRA courts are invested with discretion to permit the amendment of a pending, timely-filed post-conviction petition, and this Court has not endorsed the Commonwealth's position that the content of amendments must substantively align with the initial pleading. Rather, the prevailing rule remains simply that amendment is to be freely allowed to achieve substantial justice." Flanagan, 578 Pa. at 605, 854 A.2d at 499-500.

then filed a supplemental motion to dismiss on August 19, 2004, to which Appellant responded on December 23, 2004.

On January 19, 2005, the PCRA court scheduled a February 17, 2005 evidentiary hearing on several issues, including whether <u>Atkins</u> applied to the instant matter. Shortly thereafter, however, the court indicated that the February hearing would encompass only oral argument on the applicability of <u>Grant</u> to the present matter. PCRA court orders filed 1/19/05, 1/25/05. On October 26, 2005, the Commonwealth filed a supplemental brief in opposition to Appellant's claim for relief under <u>Atkins</u>, but before the <u>Atkins</u> issue was further addressed by the court, Appellant filed another supplement to his request for post-conviction relief on January 27, 2006, spurred by the disclosure of the "Sagel Lecture" notes, asserting that the Commonwealth had violated <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). Finally, on March 1, 2006, the PCRA court indicated that it would set a hearing date on the <u>Atkins</u> issue "in view of" <u>Commonwealth v. Miller</u>, 585 Pa. 144, 888 A.2d 624 (2005)).[61] Docket entry dated 3/1/06.

---

[61] <u>Atkins</u> left to the individual states the responsibility of setting procedures to assess a defendant's claim of intellectual disability. <u>Atkins</u>, 536 U.S. at 317, 122 S.Ct. at 2250.
In <u>Miller</u>, this Court established the prevailing standard for <u>Atkins</u> claims in Pennsylvania: a defendant must show, by a preponderance of the evidence, that he is "[intellectually disabled]" under the definitions provided by the American Psychiatric Association (APA) or the American Association of Mental Retardation (AAMR), which was renamed the American Association on Intellectual and Developmental Difficulties (AAIDD). <u>Miller</u>, 585 Pa. at 155, 888 A.2d at 631. These clinical definitions are as follows:

The AAMR defines mental retardation as a "disability characterized by significant limitations both in intellectual functioning and in adaptive behavior as expressed in the conceptual, social, and practical adaptive skills." Mental Retardation[: Definition, Classifications, and Systems of Supports 1 (10th ed. 2002) (Mental Retardation) ] at 1. The

(continued…)

On September 29, 2006, however, Appellant authored a pro se letter to Judge Jones requesting the court to disregard the Atkins claim filed by counsel. Pro se letter filed 9/29/06. In doing so, the letter referenced the testing that had been performed by Dr. Gerald Cooke indicating that Appellant had an IQ of 78, expressed Appellant's understanding that "[intellectual disability] is characterized by an IQ of less than 70," and suggested "for that reason the Atkins petition doesn't apply to me." Id. Without acknowledging Appellant's pro se letter to Judge Jones, Appellant's PCRA counsel filed a motion for a jury trial on the Atkins claim on December 13, 2006.

Appellant appeared before the court on January 23, 2007, and he read a prepared statement that he was "absolutely not retarded" and reiterated that he did not wish to pursue an Atkins claim. Though Appellant was sworn in prior to making the statement, the court directed that he was not subject to questioning by either side, which prompted the following objection before Appellant completed his prepared statement:

---

(…continued)

> American Psychiatric Association defines mental retardation as "significantly subaverage intellectual functioning (an I.Q. of approximately 70 or below) with onset before age 18 years and concurrent deficits or impairments in adaptive functioning." [Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1992) (DSM–IV),] at 37. Thus, ... both definitions of mental retardation incorporate three concepts: 1) limited intellectual functioning; 2) significant adaptive limitations; and 3) age of onset.

Id. at 153, 888 A.2d at 629–30 (footnote omitted). In sum, a defendant may establish "mental retardation" under either the AAMR (AAIDD) or APA/DSM–IV definition by showing by a preponderance of the evidence that he has limited intellectual functioning, significant adaptive limitations, and the onset of his subaverage intellectual functioning began before he turned 18 years old. Williams, 619 Pa. at 224, 61 A.3d at 982.

Commonweath v. Hackett, 626 Pa. 593-94, 99 A.3d 11, 26-27 (2014).

[**COMMONWEALTH**]: My objection is, if the defendant wrote a letter, it is inappropriate for him to sit here and read it to the Court. Nobody has a copy of it. I mean, if he wants to testify, he should testify and be cross-examined. I don't know of a procedure where he just writes a letter that only he knows about and is going to sit here and read it to the Court.

THE COURT: I understand your concern and the basis for your objection. At this juncture, I'm simply inviting Mr. Mason to apprise the Court as to whether or not he wishes to pursue the issue of Atkins versus Virginia. Mr. Mason, can you cut to the chase?

[APPELLANT]: Should I start from the beginning?

THE COURT: Why don't you answer that question?

\*\*\*

THE COURT: Now, Mr. Mason, do you understand the question?

[APPELLANT]: Yes.

THE COURT: Can you give me an answer, yes or no?

[APPELLANT]: I wish not pursue [sic] the Atkins.

THE COURT: Now, can you tell me why?

[APPELLANT]: Should I -- can I finish reading my letter? It's a brief letter, Your Honor.

THE COURT: Yes, sir, go ahead.

[APPELLANT]: "I would like to thank you for giving me this opportunity to put into words how I feel. Since I'm not a great verbal communicator, I decided to express myself on paper.
"During the past two years, I begin [sic] to apply myself with tutoring classes twice a week with an inmate, Mr. John Lesko. Mr. Lesko has been approved by the prison administration to educate me with pay. At this point, I wish not to waive any of my issues.
"I only wish to disregard the Atkins claim due to my ability and potential to learn. Although I encountered a great deal of information, I'm very aware that wouldn't exempt me from having some complication and difficulties in my life due to excessive drug abuse over the years.

"However, I do acknowledge as well that I am a man that's unlearned, but I'm absolutely not retarded, and I pray this misrepresentation be disregarded."

**THE COURT:** Mr. Egan [PCRA counsel]?

**[PCRA COUNSEL]:** Your Honor, is the Court inviting questioning of Mr. Mason at this time?

**THE COURT:** I think more I wanted a response rather than questioning of Mr. Mason.

Id. at 17-21. This represented the full extent of Appellant's involvement in the competency colloquy.

Appellant's counsel argued that Appellant did not have the right to pro se waive the Atkins claim as this was a strategy decision that was instead to be made by appointed counsel. Id. at 8-10, 21. The court directed the parties to brief whether a defendant who articulates that he does not fall within the definition of intellectual disability has the right to decide over the objection of counsel whether to pursue an Atkins claim, and the Commonwealth and Appellant's PCRA counsel submitted written argument on the issue in March, 2007.

Meanwhile, PCRA counsel had received an Affidavit/Declaration from trial counsel dated January 18, 2007, in which trial counsel opined that Appellant was "slow," had a "very limited" ability to assist in his defense, and did not "make the connection" that the admission into evidence of certain pictures of Appellant and the victim would reflect on Appellant's own character, not just that of the victim. Affidavit/Declaration dated 1/18/07. Believing that the Affidavit/Declaration set forth "indicia of incompetence," counsel filed a supplemental PCRA petition on Appellant's behalf, asserting that Appellant is entitled to a new trial because (1) the trial court erred in failing to sua sponte order a pre-trial

competency hearing, despite indicia that Appellant was incompetent; (2) trial counsel was ineffective for failing to request a competency hearing; and (3) Appellant was tried while incompetent. Supplemental PCRA petition filed 5/11/07.[62] However, the supplemental PCRA petition did not raise appellate counsel's ineffectiveness for failing to present this instance of trial counsel's ineffectiveness on direct appeal.

The parties reappeared before the court on June 12, 2007, on the issue of whether Appellant had the right to waive his Atkins claim over the objection of counsel. At the outset, PCRA counsel reported that trial counsel had provided an affidavit expressing his doubts about Appellant's ability to comprehend matters during the representation, which observation, PCRA counsel believed, was also "relevant to the Atkins claim" raised before Judge Jones. N.T. 6/12/07 at 4. After a momentary exchange confirmed that there had been no competency evaluation conducted prior to Appellant's January, 2007, appearance before the PCRA court, Judge Jones granted Appellant's pro se request to withdraw the Atkins claim, based on the judge's determination that "Appellant exhibited a level of competency sufficient to demonstrate that he has the ability and had the ability on the day he testified to knowingly and intelligently waive his right to an Atkins claim, and moreover, he did so." N.T. 6/12/07 at 5-6.[63] Thus, the PCRA court did not reach the

---

[62] A defendant is presumed competent to stand trial, and to prove incompetence, he must establish that he was either unable to understand the nature of the proceedings or unable participate in his own defense. Commonwealth v. Smith, 609 Pa. 605, 650-651, 17 A.3d 873, 899-900 (2011).

[63] Judge Jones eventually addressed the failure to hold a hearing on counsel's supplemental PCRA petition addressing Appellant's competence to stand trial, after the Commonwealth responded to the issue in a motion to dismiss citing various portions of the record purportedly demonstrating Appellant's competence to stand trial. Motion filed 12/14/07 (citing N.T. 2/13/96 at 55-121 [Appellant's trial testimony]; N.T. 2/14/96 at 9-11 (continued…)

merits of the Atkins issue raised by counsel, but instead went on to address the remainder of Appellant's post-conviction claims.[64]

Following the eventual denial of Appellant's request for post-conviction relief, Appellant's Rule 1925(b) statement indicated that he would be raising the following two questions with regard to the Atkins issue:

> 12. Is Petitioner constitutionally ineligible for the death penalty due to intellectual disability under Atkins v. Virginia in violation of Petitioner's rights under the Fifth, Sixth, Eight, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 13 and 14 of the Pennsylvania Constitution?
> …
> 19. Did the PCRA court err by ruling that the constitutional exemption from the death penalty due to intellectual disability can be waived and did the court further err by accepting the waiver without permitting or conducting inquiry into, and holding a hearing on, Petitioner's competency and capacity to waive important rights, and was Petitioner's waiver invalid because the waiver was not knowing, intelligent and voluntary and because he lacked the capacity to waive important rights, in violation of Petitioner's rights under the Fifth, Sixth, Eight, and Fourteenth Amendments to the Unites States Constitution and Article I, Sections 9, 13 and 14 of the Pennsylvania Constitution?

Pa.R.A.P. 1925(b) Statement filed 2/20/13 at 3, 5.

Responding to the position set forth in Appellant's Rule 1925(b) statement that Judge Jones erred in concluding that an Atkins claim may be waived, Judge Sarmina opines that while the United States Constitution requires that our Commonwealth provide

---

(…continued)
[colloquy of Appellant prior to resting his case]; N.T. 2/20/96 at 6-7 [colloquy of Appellant prior to formal imposition of sentence]; N.T. 2/16/96 at 854-85 [Dr. Tepper's testimony on cross-examination that Appellant was not incompetent]).  Thereafter, on February 28, 2008, Judge Jones ruled that trial counsel was not ineffective for failing to request a pre-trial competency hearing.

[64] When this case was later taken up by Judge Sarmina, Appellant indicated to her that the Atkins issue had been disposed of by Judge Jones, and Appellant reiterated his position that Atkins did not apply to him and expressed his agreement with Judge Jones' ruling permitting him to waive the Atkins claim.   N.T. 2/13/12 at 12-13.

capital defendants the ability to advance a defense ofintellectual disability, a defendant

may choose to waive an Atkins claim so long as that choice is knowing, intelligent and

voluntary. She observes that capital defendants may elect not to pursue courses of

action which could potentially mitigate a sentence of death to a sentence of life

imprisonment without the possibility of parole. Pa.R.A.P. 1925(a) opinion at 52-53 (citing

Puksar, 597 Pa. at 275, 951 A.2d at 288 (holding that a capital defendant may knowingly,

intelligently and voluntarily waive the presentation of mitigation evidence);

Commonwealth v. Sam, 535 Pa. 350, 368, 635 A.2d 603, 611-12 (1993) ("A criminal

defendant has the right to decide whether mitigating evidence will be presented on his

behalf. We will not remove that right and compel admission of such evidence.")). She

finds that "[j]ust as a capital defendant may choose not to present mitigating

circumstances at a penalty-phase proceeding, a capital defendant may choose not to

present an Atkins claim." Id. at 53.

Judge Sarmina quotes this Court's explanation that:

> although the Atkins decision recognizes a constitutional right, once a state
> provides the accused access to procedures for making an [intellectual
> disability] evaluation, there is no due process requirement that the
> Commonwealth prove a negative, and assume the burden of vindicating the
> defendant's constitutional right by persuading the trier of fact that the
> defendant is not [intellectually disabled] and is eligible for execution.

Id. (citing Commonwealth v. Sanchez, 614 Pa. 1, 71, 36 A.3d 24, 66 (2011)). Judge

Sarmina thus opines:

> The Constitution requires that our Commonwealth provide capital
> defendants the ability to advance a defense of [intellectual disability]. A
> capital defendant may elect to pursue that defense, or may elect not to do
> so. The decision not to avail oneself of an Atkins claim, like other claims
> rooted in constitutional protections for which the defendant bears the
> burden of proof by a preponderance of the evidence, may be made by the
> accused himself.

Id. (citing Oregon v. Guzek, 546 U.S. 517, 526, 126 S.Ct. 1226, 1232-33, 163 L.Ed.2d 1112 (2006); Puksar, 597 Pa. at 275-76, 951 A.2d at 288). Judge Sarmina further posits that "[i]n Pennsylvania, a capital defendant must affirmatively pursue an Atkins claim; whether the failure to pursue the claim is borne out of a lack of evidence or a lack of interest is immaterial." Id. at 54.

Responding to the position set forth in Appellant's Rule 1925(b) statement that Appellant's waiver was invalid because it was not knowing, intelligent and voluntary and because he lacked the capacity to waive the right, Judge Sarmina acknowledges that in light of the consequences of a decision not to pursue an Atkins claim, such a choice must be made knowingly, intelligently and voluntarily, and she suggests that only a competent defendant should be permitted to waive a constitutional defense. Id. (citing Puksar, 951 A.2d at 288, 288 n.10). Regarding the determination of competency, Judge Sarmina concludes:

> The competency standard is the same whether waiving the right to present mitigating evidence, the right to counsel, or the right to present an Atkins claim: the defendant must have the ability to consult with counsel with a reasonable degree of understanding and have a rational understanding of the nature of the proceedings. Id. "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings."

Id. (citing Commonwealth v. Starr, 541 Pa. 564, 589-90, 664 A.2d 1326, 1339 (1995)) (italics in original).

With regard to the circumstances at hand, Judge Sarmina acknowledges Appellant's initial counseled request to amend his PCRA petition to include the Atkins claim, Appellant's subsequent pro se indication that he no longer wished to pursue the

claim, and Judge Jones' eventual colloquy of Appellant and grant of permission to waive the claim. Id.

> Prior to appearing in open court, petitioner recognized that he is "not a great verbal communicator," so he wrote a short statement for the court. Petitioner exerted time and effort to ensure that his desire to waive the Atkins claim would be understood. As soon as Judge Jones permitted him an opportunity, petitioner began reading his prepared statement. N.T. 6/12/2007 at 16. When Judge Jones interrupted in an effort to "cut to the chase," petitioner stated that he understood Judge Jones question and answered, "I wish not to pursue the Atkins." Id. at 18-19. By promptly responding to Judge Jones' questions in a succinct fashion, and then explaining his reasons for waiving the Atkins claim more elaborately thereafter, petitioner evidenced an awareness of his purpose in court and the ability to understand the proceedings.

Id. Judge Sarmina opines that based on the circumstances, it was well within Judge Jones' discretion to determine that Appellant "possessed the 'level of competency sufficient [to] demonstrate that he has the ability and had the ability on the day he testified to knowingly and intelligently waive his right to an Atkins claim and, moreover, he did so.'" Id. at 54-55 (citing N.T. 6/12/2007 at 6).

Judge Sarmina acknowledges that Appellant's Rule 1925(b) statement also asserted that Judge Jones' colloquy failed to establish that petitioner knowingly, intelligently and voluntarily waived his right to pursue an Atkins claim, Id. at 55, n. 26, but she discerns that this issue has been waived because counsel did not raise the sufficiency of that colloquy before the PCRA court, and "claims cannot be raised for the first time on appeal." Id. (citing Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")). Pertinent to Judge Sarmina's conclusion in this regard, she observed that she had given the parties the opportunity to address Judge Jones' June 12, 2007 decision to allow Appellant to waive the Atkins claim during the February 13, 2012 oral argument conducted following the

October 2011 evidentiary hearing on the penalty phase mitigation issue. Id. at 52, n. 24 (citing N.T. 2/13/12 at 68).[65]

The brief filed before this Court on Appellant's behalf argues that Appellant is ineligible for the death penalty under Atkins and he should not have been permitted to "waive" the claim because: (A) Atkins created a non-waivable categorical bar to the execution of the intellectually disabled; (B) the decision whether to pursue an Atkins claim lies solely with counsel; (C) the "waiver" colloquy was inadequate; (D) a competency hearing should have been held prior to the waiver; (E) the PCRA court abused its discretion in permitting Appellant to "waive" the eighth amendment prohibition against execution of the intellectually disabled; and (F) Appellant suffers from intellectual disability. Additionally, it raises several allegations of error with regard to Judge Sarmina's Rule 1925(a) opinion.[66]

---

[65] When the proceedings commenced on February 13, 2012, Appellant accurately indicated to Judge Sarmina that Judge Jones disposed of the Atkins issue, and Appellant reiterated his position that Atkins did not apply to him and expressed his agreement with Judge Jones' ruling permitting him to waive the Atkins claim. N.T. 2/13/12 at 12-13. Following oral argument on the penalty phase mitigation issue, Judge Sarmina inquired of counsel: "Do either of you want to comment on Mr. Mason's comment that he is not retarded?" Id. at 68. In response, Appellant's counsel expressed his belief that whether Appellant was intellectually disabled had not been legally determined because Appellant was permitted to waive an Atkins hearing, and stated "It's my view that that's not something we can actually waive and that's something that may or may not be an issue for appeal, but it's certainly not at issue before this Court." Id.

[66] "Although it is counsel who advocate, we generally attribute arguments to the parties whom they represent." Commonwealth v. Sam, 597 Pa. 523, 571, 952 A.2d 565, 594 (2008). To do so with regard to the Atkins issue would be inaccurate, however, as from the time Appellant delivered his September, 2006 pro se letter to Judge Jones, through his comments to Judge Sarmina during the February 13, 2012 oral argument, Appellant has consistently expressed his belief that Atkins does not apply to him and that he does not wish to pursue the claim. Although the Rule 1925(b) statement and brief to this Court filed by counsel on Appellant's behalf reiterate counsels' position that Atkins applies to (continued…)

Counsel initially assert that the constitutional prohibition on the execution of intellectually disabled persons is analogous to the prohibition on the execution of insane persons, those who were under the age of 18 at the time the crime was committed, or those who have not committed an intentional or recklessly indifferent murder, and is thus absolute and cannot be voluntarily waived. Appellant's brief at 63 (citing Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525, (2008); Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986)). Quoting Atkins that "[the United States Constitution] 'places a substantive restriction on the State's power to take the life' of a [intellectually disabled] offender," Id. at 64 (citing Atkins, 536 U.S. at 321), counsel also cite Rogers v. State, 276 Ga. 67, 575 S.E.2d 879 (Ga. 2003), as holding that "a capital defendant may not waive an Atkins claim where his mental capacity is challenged or otherwise appears to be in question, and requiring an adjudication to determine eligibility for death." Id.[67] In

---

(…continued)
Appellant and that he should not be permitted to withdraw the claim, nothing in the Rule 1925(b) statement or brief suggest that *Appellant* has altered his position to the contrary. Thus, with regard to this issue, we attribute the arguments presented by Appellant's counsel ("counsel"), separate and apart from the position taken by Appellant himself.

[67] As the Rogers court explained:

> In Georgia, the procedure to be followed in [determining if a defendant is [intellectually disabled] depends upon the date of trial. For those defendants tried after July 1, 1988, OCGA § 17-7-131 permits them to contend that they were [intellectually disabled] at the time of the crime and to present evidence of such [intellectual disability] to the fact finder. In capital cases, the fact finder is then required to determine during the guilt-innocence phase of trial whether the defendant is guilty but [intellectually disabled]. OCGA § 17-7-131(j). Under this statutory scheme, where the trier of fact makes a specific finding that the defendant is

(continued…)

further support of their stance, counsel filed an application to file a "short supplemental brief addressing supplemental authority" on June 18, 2014, following the United States Supreme Court's May 27, 2014 decision in Hall, supra, asserting that Hall supports the contention that Atkins claims are non-waivable.   Supplemental Brief filed 6/18/14 at 1.[68]

_____

(…continued)

> [intellectually disabled], the defendant cannot be executed but must instead be sentenced to life imprisonment.

Rogers, 276 Ga. at 68-69, 575 S.E.2d at 881 (footnote omitted).   Rogers further explained that:

> A defendant tried prior to July 1, 1988, for whom no judicial determination on [intellectual disability] will have been made, may choose to raise the issue of his or her [intellectual disability] by filing a petition for habeas corpus and presenting sufficient credible evidence, including at least one expert diagnosis of mental retardation, to create a genuine issue regarding[intellectual disability].

Id., 276 Ga. at 69, 575 S.E.2d at 881 (citation omitted).   If the habeas corpus court determines there is a genuine issue, the defendant will be entitled to a full evidentiary hearing before a jury on the issue of intellectual disability(a so-called Fleming hearing). Id.

Rogers specifically held that once Rogers chose to initiate habeas corpus proceedings by filing a petition alleging he was intellectually disabled, and successfully adduced sufficient credible evidence of such intellectual disability to authorize a full evidentiary hearing on the issue of his intellectual disability, Rogers could not elect to waive his right to that evidentiary hearing and it was error for the trial court permit him to waive the right to the hearing.   Id., 276 Ga. at 69-70, 575 S.E.2d at 882.

[68] We hereby grant counsels' "Application to File a Short Supplemental Brief Addressing Supplemental Authority" as found in the United States Supreme Court's decision in Hall, supra.   As we explained in Hackett,:

> The 5–4 decision in Hall narrowed the authority of the states to define intellectual disability, holding that states cannot rely on a fixed IQ test number (in Hall, 70) as conclusive evidence of a defendant's intellectual disability if that score falls within a certain range, i.e., "the test's acknowledged and inherent margin of error"—meaning, in practical terms, if IQ tests reveal an IQ of 75 or lower. … The Court thus held that the Eighth Amendment requires states to permit a petitioner with such a demonstrated IQ to present additional evidence of [intellectual disability], including testimony regarding adaptive functioning deficits.   Id. at 1998–99.

Hackett, 626 Pa. at 619, 99 A.3d at 42 (Castille, C.J., concurring)(citingHall).

The supplemental brief additionally asserted that Commonwealth v. Robinson, 623 Pa. 345, 381, 82 A.3d 998, 1019 (2013) demonstrates that this Court has "interpreted Atkins as presenting a categorical, non-waivable bar to the execution of the intellectually disabled." Id. at 2.[69]

In addition to contending that an Atkins claim may not be voluntarily waived, counsel propose that the decision whether to pursue an Atkins defense "lies solely with counsel." Id. at 64. They acknowledge that a defendant may decide, against counsel's advice, "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal," but suggest that capital defense counsel should be permitted to choose to pursue an Atkins claim without obtaining the defendant's consent. Id. at 64 (citing Florida v. Nixon, 543 U.S. 175, 187, 125 S.Ct. 555, 160 L.Ed.2d 565 (2004) (quoting Taylor v. Illinois, 484 U.S. 400, 417-18, 108 S.Ct. at 657 (1988); Jones v. Barnes, 463 U.S. 745, 751, 103 L.Ed.2d 3308, 3312 (1983)).[70] Here, counsel observe, since the goal

---

[69] The appellant in Robinson unsuccessfully asked this Court to extend Atkins individuals with severe brain damage. As cited by Appellant, we noted in dicta that:

> This Court has broadly stated that questions relating to the legality of sentencing are not waivable. Commonwealth v. Aponte, 579 Pa. 246, 855 A.2d 800, 802 n. 1 (2004). Additionally, the Atkins Court explained that "the [United States] Constitution 'places a substantive restriction on the State's power to take the life' of a[n] [intellectually disabled] offender," 536 U.S. at 321, 122 S.Ct. 2242, leaving little doubt that actual Atkins claims implicate the legality of sentencing.

Id.

[70] Nixon held that counsel's failure to obtain the defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient where defendant had remained unresponsive to counsel's attempts to explain the strategy. Instead, the High Court held, "if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the Strickland standard, that is the end of the matter; no tenable claim of ineffective assistance would remain." Nixon, 543 U.S. at 192, 125 S.Ct. at 563.

of both Appellant and counsel was to obtain relief from Appellant's convictions and death sentence, it was up to counsel to determine how best to achieve that goal. Id. at 65. They additionally assert that by allowing Appellant to withdraw the Atkins claim over counsels' objection, the PCRA court erroneously permitted hybridized representation. Id. at 65, 65 n. 29 (citing Commonwealth v. Ellis, 534 Pa. 176, 180, 626 A.2d 1137, 1139 (1993) ("no constitutional right to hybrid representation either at trial or on appeal").

Couching Appellant's efforts to end the pursuit of the Atkins claim as "an effort to control and dictate the course of litigation of his case," counsel next assert that Judge Jones should have determined that Appellant's mental disabilities precluded him from representing himself and prevented him from "overrul[ing] counsel's reasoned judgment" as to the Atkins claim. Id. at 70 (citing Indiana v. Edwards, 554 U.S. 164, 175-176, 128 S.Ct. 2379, 2386-87, 171 L.Ed.2d 345 (2008) and Commonwealth v. El, 602 Pa. 126, 134 n. 2, 977 A.2d 1158, 1163 n.2 (2009)).[71]

---

[71] "In [Edwards], the United States Supreme Court considered whether there was a legally meaningful distinction between competency to stand trial and competency to represent oneself at trial." Spotz, 610 Pa. at 56, 18 A.3d at 266. Although noting that "[t]he issue in Indiana v. Edwards is not relevant in this appeal," this Court explained in El, supra, that:

> [Edwards] clarified the Faretta standard as applied to criminal defendants who suffer from some form of mental illness, but are nonetheless competent to stand trial. Indiana v. Edwards, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). The question was whether the trial judge could deny a defendant's request to proceed pro se where the judge determined that the defendant's mental illness (schizophrenia), while not affecting his competency to stand trial, nonetheless precluded him from adequately representing himself. The Court held that the judge had such authority, concluding that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. States [may] insist upon representation by counsel for those

(continued…)

Counsel further assert that Appellant's full scale IQ result of 71 is within the range of "intellectual disability." Id. at 70 (citing N.T. 2/16/96; Commonwealth v. Gibson, 592 Pa. 411, 416, 925 A.2d 167, 170 (2007)).[72] They indicate that Gibson involved a capital defendant who "obtained Atkins relief with an IQ score of 74." Id.[73] Here, citing to the testimony of Larry Lawhorn, NT 2/16/1996, 43-52; the testimony of Thelma Mason, NT 2/16/1996, 54-64; the testimony of Dr. Allan Tepper, NT 2/16/96, 72-104; the testimony of Dr. Gerald Cooke NT 10/26/11, 14-143; the testimony of Dr. Robert Sadoff, 10/24/2011,13-85; the testimony of Dr. Barry Gordon, NT 10/27/11, 11-155; and the testimony of Dr. Richard Restak NT 10/28/11, 3-48, counsel assert that Appellant suffered from adaptive deficits in at least five of the eleven skill areas set forth in the DSM-IV (functional academics, social and interpersonal skills, self-direction, selfcare, and safety), and that Appellant also meets the American Association on Intellectual and

---

(…continued)
    competent enough to stand trial but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." Id. at ___, 128 S.Ct. at 2387-88.
EI, 602 Pa. at 135 n. 2, 977 A.2d at 1163 n. 2. Edwards, a diagnosed schizophrenic, had a lengthy record of psychiatric reports which indicated active mental illness interspersed with periods of competence.

[72] Counsel acknowledge that "Dr. Cooke's later testing showed a full scale IQ of 78, but he noted Appellant tested in the [intellectually disabled] range on key subtests." Appellant's brief at 71, n. 30 (citing NT 10/26/11, 22-23 (wherein, Dr. Cooke testified that Appellant scored a 68 and a 67 in the subtests for immediate verbal memory and delayed verbal memory)).

[73] In Gibson, the appellant's IQ was within the 70 to 75 range, but the Court noted that both parties agreed that depending upon the degree of adaptive deficits it is possible for a person with an IQ ranging from 70 to 75 to suffer from intellectual disability, and that in the appellant's case the testimony of his expert witnesses was consistent with the PCRA court's understanding that such deficits were on a scale supporting the finding of intellectual disability, thus the Court affirmed the PCRA court's determination that the appellant was intellectually disabled. Gibson, 592 Pa. at 417-418, 925 A.2d at 171.

Developmental Disabilities standards, which require that deficits be demonstrated in one of three broad areas – conceptual, social, and practical. Id. at 71.

Counsel relatedly assert that the PCRA court erred in (1) likening the waiver of an Atkins claim to the waiver of the presentation of mitigating evidence because Atkins "imposes a categorical, substantive bar to the execution of the mentally disabled, and is thus nonwaivable," Id. (no citation to authority provided), (2) finding that it was within Judge Jones' discretion to "find the waiver to be adequate," Id. at 71-72, and (3) failing to apply controlling United States Supreme Court law on the requirements and adequacy of waiver of important rights. Id. at 72 (not citation to authority provided).

Counsel next assert that even if an Atkins claim may be waived, the waiver colloquy here was inadequate. Id. at 65. Specifically, they complain that Appellant was not advised of the legal standards, applicable burdens, or the consequences of his "waiver," nor was counsel permitted to question Appellant, thus there is nothing in the record from which a reviewing court could conclude that Appellant's decision was knowing, voluntary, and intelligent. Id. at 66.

Counsel additionally insist that "[a] competency hearing should have been held prior to the waiver," Appellant's brief at 68, but argues in support thereof that a defendant has a right not to be tried while incompetent and a corresponding right to a hearing on competence. Id. (citing Cooper v. Oklahoma, 517 U.S. 348, 354 n.4, 116 S.Ct. 1373 n.4, 1377, 134 L.Ed.2d 498, (1996) (Because the right not to be tried while incompetent is so fundamental, the trial court must "protect [it] even if the defendant has failed to make a timely request for a competency determination."); Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (Where there are indications of incompetency, a

defendant has a substantive due process right not to be tried while incompetent); <u>Pate v. Robinson</u>, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (Where there are indications of incompetency, a defendant has a procedural due process right to a hearing on competence)). This argument goes to the issue of whether Appellant is entitled to relief as the result of the failure to hold a hearing on his competence to stand trial. As noted, this ground for relief was raised and addressed before Judge Jones separate from the <u>Atkins</u> issue.

The Commonwealth counters that Judge Jones properly allowed Appellant to withdraw the <u>Atkins</u> claim, and argues that even if he had deferred to counsel and denied Appellant's request to withdraw the claim, it would not have entitled Appellant to relief.

With regard to granting Appellant's request to withdraw the <u>Atkins</u> claim, the Commonwealth observes that so long as the decision is knowing, intelligent and voluntary, a defendant may properly direct his counsel not to present mitigating evidence on his behalf during the sentencing proceedings, even mitigating evidence concerning the defendant's mental health. Commonwealth's brief at 72 (citing <u>Commonwealth v. Small</u>, 602 Pa. 425, 467, 980 A.2d 549, 574-75 (2009)); <u>Puksar</u>, 597 Pa. at 276-277, 951 A.2d at 288; <u>Rega</u>, 593 Pa. at 710-11, 933 A.2d at 1026-28; <u>Commonwealth v. Birdsong</u>, 538 Pa. 587, 602-03, 650 A.2d 26, 33-34 (1994); <u>Sam</u>, 535 Pa. at 368-69, 635 A.2d at 611-12. The Commonwealth further notes that this Court has concluded that ethical rules "do[ ] not furnish counsel with the right to override what the client considers to be in his best interest." <u>Id.</u> (citing <u>Commonwealth v. Cross</u>, 535 Pa. 38, 44, 634 A.2d 173, 176 (1994)).

The Commonwealth urges that such precedent applies equally here. Although recognizing that Atkins created a new defense to the imposition of a death sentence, the Commonwealth emphasizes that the defendant still carries the burden of proof, such that the defense must be litigated only if the defendant first proffers evidence to support it. Id. (citing Commonwealth v. Sanchez, 614 Pa. 1, 65 n. 19, 36 A.3d 24, 62-63 & n. 19 (2011)). Thus, the Commonwealth declares, the PCRA court here correctly concluded that, as with the presentation of mitigation evidence, "counsel may not override their client's decision and proceed with that defense." Id.

Noting counsels' reliance on Nixon to support the contention that counsel must be permitted to override a defendant's directions, the Commonwealth argues that Nixon is factually dissimilar, and disputes that its holding is helpful to counsels' position, arguing that it instead involved a defendant (unlike Appellant here) who neither approved nor rejected counsel's tactic, and that it held only that "[w]hen counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest *and the defendant is unresponsive*, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." Id. at 73 (citing Nixon, 543 U.S. at 192, 125 S.Ct. at 563 (emphasis in brief)).

The Commonwealth also disputes counsels' suggestion that Appellant was precluded from directing counsel to eschew the Atkins claim because he did not disagree with the objectives of the litigation and had not waived counsel altogether. To the contrary, the Commonwealth asserts, a defendant may direct counsel not to proceed with specific lines of defense without waiving counsel or declining to challenge imposition of a capital sentence. Id. at 73 (citing Rega, 593 Pa. at 710-11, 933 A.2d at 1026-28;

Birdsong, 538 Pa. at 602, 650 A.2d at 33-34).   Likewise the Commonwealth disputes that this is a matter of hybrid representation, as Appellant did not request to file his own briefs, present witnesses, or argue portions of the case, but instead simply directed his representatives not to pursue, in his name, a course of action he deemed objectionable. Id.

The Commonwealth acknowledges counsels' assertion that Atkins adopted a categorical bar that "cannot be voluntarily waived," but the Commonwealth discerns that this argument is misguided because the question here is not one of waiver but is instead "whether a defendant may have the ultimate say on whether to pursue a particular line of defense."   Id. at 74.   In so arguing, the Commonwealth emphasizes that "[p]lainly, it would violate the Eighth Amendment to execute an offender unless a jury had been given an opportunity to consider mitigating evidence," Id. (citing Guzek, 546 U.S. at 526, 126 S.Ct. at 1232) but "[t]his Court, however, has held that a defendant may instruct his counsel not to present such evidence."   Thus, the Commonwealth opines, Appellant here was entitled to decide whether to present evidence to the lower court to establish that he was intellectually disabled.   Id.

Even if Appellant's decision is considered "waiver," as opposed to voluntary withdrawal, the Commonwealth maintains that constitutional rights, including under the Eighth Amendment, may be waived.   Id. at 74 (citing Stewart v. LaGrand, 526 U.S. 115, 119 S.Ct. 1018, 143 L.Ed.2d 96 (1999) (defendant waived constitutional challenge to method of execution); Commonwealth v. Patterson, 625 Pa. 104, 144, 91 A.3d 55, 79 (2013) (defendant waived claim that death penalty was unconstitutional as applied to him)).   The Commonwealth points out that this Court -- like courts in other jurisdictions --

has in fact held an <u>Atkins</u> claim waived.   <u>Id.</u> (citing <u>Steele</u>, 599 Pa. at 380, 961 A.2d at

808-09; <u>State v. Frazier</u>, 873 N.E.2d 1263, 1291 (Oh. 2007); <u>Bowling v. Commonwealth</u>,

163 S.W.3d 361, 371-72 (Ky. 2005); <u>Winston v. Commonwealth</u>, 604 S.E.2d 21, 51 (Va.

2004)).   Indeed, the Commonwealth opines, "deeming an <u>Atkins</u> claim unwaivable would

eviscerate the procedures this Court has adopted for presenting such claims.   <u>Id.</u> (citing

<u>Sanchez</u>, <u>supra</u>).[74]

The Commonwealth continues to dispute counsels' contention that an <u>Atkins</u> claim

cannot be "waived," discerning that:

> <u>Atkins</u> claims are fundamentally different than the other "categorical bars"
> counsel baldly assert cannot be "voluntarily waived." (Initial Brief of
> Appellant, 63).   As this Court has observed, "[t]he fundamental query in
> <u>Atkins</u> differs in kind from that in a case such as <u>Roper v. Simmons</u>, 543
> U.S. 551 ... (2005), which ties Eighth Amendment death ineligibility to an
> objective mathematical measure, specifically, the defendant's age."
> <u>DeJesus</u>, 58 A.3d at 85.   Unlike proof of age, determining whether one is
> intellectually disabled is "often highly subjective."   <u>Id.</u>   Moreover, the
> defense typically requires substantial evidence, and must be presented to a
> jury (at least in trials after <u>Atkins</u> was decided).   <u>Sanchez</u>, 36 A.3d at 62-63.
> Attempting to prove intellectual disability is thus more akin to presentation
> of mitigation evidence or other trial defenses.

<u>Id.</u> at 75.   The Commonwealth also distinguishes claims of incompetency to be executed

and the procedures applicable to those claims:

> Unlike intellectual disability, a claim of incompetency to be executed
> "presumably ripens only after a death warrant has issued."
> <u>Commonwealth v. Banks</u>, 29 A.3d 1129, 1134 (Pa. 2011).   Moreover,
> unlike <u>Atkins</u> claimants, any offender with a meritorious incompetency claim
> would also presumably be incompetent to forego it.   <u>See</u> <u>Commonwealth v.
> Heidnik</u>, 720 A.2d 1016, 1020 (Pa. 1998) ("it makes no sense" to inquire
> whether a condemned prisoner is competent to forego raising a claim of
> incompetency).   Given the differences in the nature of the claims, and the

---

[74] The Commonwealth additionally dismisses counsels' reliance on <u>Hall</u>, observing that
<u>Hall</u> "concerned the definition of intellectual disability.   It did not address whether a
defendant may decline to claim he has that condition."   Commonwealth's brief at 75.

timing in which they must be brought, this Court has held that procedures for adjudicating competency to be executed are "inapposite" for <u>Atkins</u> claims. <u>Sanchez</u>, 36 A.3d at 56 n.15.

<u>Id</u>. at 75-76.

Turning to counsel's claim that the colloquy of Appellant was inadequate, the Commonwealth echoes Judge Sarmina's conclusion that because counsel raises this issue for the first time on appeal, counsel has waived that challenge as a ground for relief. <u>Id</u>. at 76 (citing Rule 1925(a) opinion at 55, n.26); Pa.R.A.P. 302(a); <u>Fletcher</u>, 604 Pa. at 524, 986 A.2d at 778; Puksar, 597 Pa. at 275, 951 A.2d at 288).

Even if preserved, the Commonwealth asserts, the allegation is meritless, as the circumstances surrounding Appellant's request to withdraw the <u>Atkins</u> claim and the court's decision to grant that request support a determination that Appellant's decision was knowing and intelligent. <u>Id.</u> at 76-77 (citing N.T. 6/12/07 at 6). The Commonwealth acknowledges counsels' effort to analogize these circumstances to cases involving guilty pleas and the waiver of trial counsel, but the Commonwealth contends that Appellant's decision here is more closely akin to the decision to refrain from presenting mitigating evidence, and it notes that there is no "constitutional requirement of or right to" a colloquy before waiving mitigating evidence. <u>Id.</u> at 77 (citing <u>Puksar</u>, 597 Pa. at 275, n. 11, 951 A.2d at 288 n.11). The Commonwealth maintains that even in circumstances where a colloquy is required, a defective colloquy does not, by itself, establish that the waiver was unknowing or involuntary. <u>Id.</u> (citing <u>Commonwealth v. Mallory</u>, 596 Pa. 172, 189, 941 A.2d 686, 697 (2008); <u>Spotz</u>, 610 Pa. at 50-51, 18 A.3d at 263. Thus, the Commonwealth reasons, even assuming counsel had preserved an objection to the manner in which Appellant was permitted to withdraw the <u>Atkins</u> claim, any contention

that Appellant's withdrawal was rendered involuntary or unknowing by the lack of a more detailed colloquy is meritless.  Id.

The Commonwealth also assails as waived counsel's complaint that a competency hearing was required, observing that counsel never requested such a hearing.  Id. at 77-78 (citing Fletcher, 986 A.2d at 778 & n.24 (defendant waived claim of incompetence to waive counsel for post-trial motions)).  Additionally, the Commonwealth suggests that even if a hearing had been requested it would not have been granted in light of the questionable "indicia of incompetence" offered by counsel, counsels' failure to identify any expert opinion that Appellant is, in fact, incompetent, and Appellant's demeanor and actions over the lengthy course of the trial and the PCRA proceedings, which did not cast doubt on Appellant's competence.  Id. at 78-79.

Also waived for failure to present it before the PCRA court, according to the Commonwealth, is counsels' claim under Edwards supra, that an otherwise competent defendant may nonetheless be found to lack sufficient mental capacity to represent himself.  Id. at 80 (citing Pa. RA.P. 302(a)).  Even if the allegation of error had been preserved, the Commonwealth contends that Edwards held that the Constitution **permits** states to impose greater limits on self-representation but did not **require** courts to apply a heightened standard of competency for self-representation.

The Commonwealth lastly challenges counsels' suggestion that an evidentiary hearing is necessary to prove Appellant's ineligibility under Atkins, emphasizing that the Commonwealth's expert opined that Appellant is merely of "low normal intelligence," and counsel have failed to present any expert opinion that Appellant is intellectually disabled.

Id. at 80-81 (noting that Dr. Tepper did not so opine, and that Dr. Cooke suggested that Appellant had borderline intellectual functioning but not intellectual disability).

> A PCRA Court "is not obliged to hold a hearing [on an Atkins claim] unless an adequate proffer has been made concerning [intellectual disability], and an issue of material fact is determined to be present." Porter, 35 A.3d at 25. Since counsel did not proffer any expert opinions identifying defendant as intellectually disabled, the PCRA court would have been justified in denying their claim even had defendant not withdrawn it.

Id. at 81.

From among the numerous claims raised herein, we address whether the PCRA court erred when it permitted Appellant to override counsels' decision to pursue an Atkins hearing, as we find it dispositive. In so doing, we specifically determine the allocation of decision-making authority over whether to raise an Atkins claim where a defendant has sought counsel's assistance in vacating his or her sentence of death.

This Court has recognized that Atkins did not "speak of a constitutionally-mandated procedure for determining [intellectual disability] in capital cases." Commonwealth v. Sanchez, 614 Pa. 1, 48, 36 A.3d at 52 (2011). Rather, Atkins specifically left "'to the States the task of developing appropriate ways to enforce the constitutional restriction upon their execution of sentences.'" Id. (quoting Atkins, 536 U.S. at 317, 122 S.Ct. 2242). With no legislative response forthcoming, this Court laid out over a series of cases the process by which an intellectual disability challenge may be brought. In so doing, we held in one matter that, analogous to determinations of criminal competency and sanity, a defendant seeking Atkins relief bears the burden to prove intellectual disability under the accepted definitions by a preponderance of the evidence. Commonwealth v. Mitchell, 576 Pa. 258, 839 A.2d 202, 210 nn.7&8 (2003). It follows

that a defendant bears the burden of bringing the Atkins-based claim in the first place or may instead elect to forego bringing an Atkins claim altogether.

In a similar context, we have recognized a capital defendant's right to forego the presentation of mitigation evidence and declined to hold counsel ineffective for complying with a capital defendant's apparently knowing and intelligent insistence to that end. Puksar, 597 Pa. at 282, 951 A.2d at 292.[75]  See also Sam, 535 Pa. at 368-69, 635 A.2d at 611-12 (holding a capital defendant has a right to present mitigating evidence at sentencing, 42 Pa.C.S. § 9711(a)(2), and he can waive that right; counsel has no duty to introduce mitigating evidence where a defendant specifically directed otherwise.); Tedford, 598 Pa. at 712-15, 960 A.2d at 44-46 (where capital defendant instructs trial counsel not to offer mitigating evidence, counsel's failure to investigate mitigation evidence not prejudicial).  We have not had occasion, however, to decide whether counsel may persist in seeking an Atkins hearing over a defendant's objection where the defendant has otherwise authorized counsel to challenge his or her sentence of death.

The United States Supreme Court has identified four decisions that are fundamental to a criminal case, such that counsel may not choose a course of action with respect to them until first obtaining the express consent of the defendant:

> It is [ ] recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal, see Wainwright v. Sykes, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2509 n. 1, 53 L.Ed.2d 594 (1977) (BURGER, C.J., concurring); ABA Standards for Criminal Justice 4-5.2, 21-2.2 (2d ed. 1980).  In addition, we have held

---

[75] In Puksar, we noted that there had been no challenge to the sufficiency of the colloquy, although the colloquy appeared on its face to have been thorough, enabling this Court to presume the waiver was knowing, voluntary, and intelligent.  Puksar at 292.

that, with some limitations, a defendant may elect to act as his or her own advocate, Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Neither Anders nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.

\*\*\*

This Court's decision in Anders, far from giving support to the new per se rule announced by the Court of Appeals [that a client may dictate all nonfrivolous claims to be raised in an appeal]....recognized that the role of the advocate "requires that he support his client's appeal to the best of his ability." 386 U.S., at 744, 87 S.Ct., at 1400. Here the appointed counsel did just that [by declining defendant's request to add nonfrivolous appellate claims].

Jones v. Barnes, 463 U.S. 745, 751, 753-54 103 S. Ct. 3308, 3312, 3314, 77 L. Ed. 2d

987 (1983).

In over thirty years since its decision in Jones, the Supreme Court has not added to

this narrow list of fundamental rights the exercise or waiver of which are for the defendant,

ultimately, to decide, though it has elaborated on the issue somewhat:

An attorney undoubtedly has a duty to consult with the client regarding "important decisions," including questions of overarching defense strategy. Strickland, 466 U.S., at 688, 104 S.Ct. 2052. That obligation, however, does not require counsel to obtain the defendant's consent to "every tactical decision." Taylor v. Illinois, 484 U.S. 400, 417-418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (an attorney has authority to manage most aspects of the defense without obtaining his client's approval). But certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant, this Court affirmed, has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); Wainwright v. Sykes, 433 U.S. 72, 93, n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C. J., concurring). Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.

<u>Nixon</u>, 543 U.S. at 187, 125 S. Ct. at 560. Though the High Court recognized in <u>Nixon</u> only a *duty to consult* with a defendant regarding "'important decisions,' which may include questions of overarching defense strategy," our jurisprudence has aligned itself with the Pennsylvania Rules of Professional Conduct to recognize a *duty to gain the consent* of a defendant regarding the overarching objective or purpose of a defense, and leaves to counsel the authority to control the many aspects involving strategy and tactics in achieving those objectives. See <u>Sam</u>, 535 Pa. at 367-69, 635 A.2d at 611-12 (relying on Rule 1.2 of the Pennsylvania Rules of Professional Conduct wherein it provides that "a lawyer shall abide by a client's decisions concerning the objectives of representation").[76]

In the collateral challenge brought before the PCRA court below, it was the overarching objective of Appellant to obtain an order vacating judgment of capital sentence. Just one from among the multiple claims counsel set forth to accomplish this objective was an <u>Atkins</u> claim, and, so, counsel posited that <u>prima</u> <u>facie</u> evidence of Appellant's intellectual disability necessitated an evidentiary hearing to determine whether Appellant was protected under the Eighth Amendment's prohibition against the execution of the intellectually disabled. Record evidence of Appellant's IQ score of 71 as a child, his placement in special classes in elementary school, his adaptive challenges as described by family and trial counsel, and the opinions of Dr. Tepper based on his most

---

[76] Rule 1.2 provides in pertinent part:

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, … and shall consult with the client as to the means by which they are to be pursued. . . . In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

Pa.R.P.C. 1.2.

recent post-conviction review of Appellant's history were offered to the PCRA court as threshold support of this claim entitling Appellant to a full evidentiary hearing. Through this claim and supporting proffer, counsels' decision to advance an Atkins claim was not in conflict with Appellant's PCRA objective but was, instead, an evidence-based strategy offered in support of this objective.

The question remains as to whether Appellant's decision over his Atkins rights was, nevertheless, comparable to the fundamental decisions subject to a defendant's choice as described by the United States Supreme Court in Jones. The United States Supreme Court has identified in the Eighth Amendment a fundamental, personal right in the intellectually disabled to be insulated from capital punishment. Yet, here, there has been no determination that Appellant is, in fact, intellectually disabled, and so the constitutional right to avoid capital punishment on this basis has not yet attached in his case. This fact, alone, distinguishes Appellant's situation from those contemplated under Jones, where the four fundamental rights recognized therein are clearly vested in a defendant at the time he or she must decide whether to waive or exercise them. Here, Appellant cannot be said to waive or exercise a conditional right where he has yet to satisfy the condition upon which the right rests.

Rather than deciding on whether to waive or exercise a vested fundamental right, Appellant and counsel were confronted with only the prospect of seeking an Atkins hearing where a court could determine if Appellant indeed possessed a right to vacate his capital sentence. Though surely important and potentially consequential, the decision to pursue the hearing, itself, did not implicate the basic principles inherent in the concept of

a volitional defendant furnished with a set of rights with which to confront the government's case against him or her that were recognized in Jones.

For example, the decision of whether or not to plead guilty is "of such moment" as described in Nixon, indeed, a defining moment for the defendant, who must either assert his or her innocence of the charges or make an admission of guilt on the charges. In either instance, the defendant's act represents a basic, fundamental statement, be it one of rejection or acceptance, on the government's charge against the defendant.[77] In contrast, Appellant's decision to forego an Atkins claim reflected no statement on his

---

[77] The High Court's decision in Nixon illustrates the judicially recognized, fundamental right to plead guilty by differentiating it from the act of conceding guilt during a capital case. Specifically, the High Court held that counsel was not obliged to obtain express consent from a consistently aloof and non-responsive defendant before employing a strategy that conceded guilt during the guilt phase of a capital trial. Central to this holding was the distinction made between conceding guilt during trial and pleading guilty, the latter of which is ultimately a decision for the defendant and always requires a defendant's express consent. Conceding guilt during the capital trial was an important decision--even though the prospect of a conviction was already very high under the facts of the case--for the obvious reason that it made a verdict of guilt and a subsequent death phase proceeding all but a certainty. However, because the concession did not relieve the prosecution of its burden to prove every element of the first-degree murder charge beyond a reasonable doubt, kept intact defendant's rights to a jury trial, to confront witnesses against him, and to make evidentiary objections, allowed for at least the theoretical possibility of jury rejection of the prosecution's case, and would not severely limit the grounds for appellate review, the chosen defense did not involve the loss of core, fundamental rights that occurs with a guilty plea. As such, counsel was free to implement this overarching defense strategy without gaining defendant's express consent, and the High Court reviewed counsel's chosen strategy under the Strickland rubric for ineffective assistance of counsel.

To be clear, Nixon was silent on whether the defendant could have, as a matter of law, blocked counsel's strategy had he openly objected to it, which is the issue we address today. However, the Nixon discussion is instructive insofar as it did not consider the highly important and consequential act of conceding guilt in a capital case to be the functional equivalent of the fundamental right to plead guilty so as to condition counsel's authority on receipt of the defendant's express consent.

position with respect to the sentence he faces.  It certainly did not represent an acceptance of his sentence or an admission that it is appropriate, for he has consistently challenged his capital sentence.

Similarly, a counseled defendant has the fundamental right to demand that an appeal be filed, but once it is filed, our jurisprudence has never recognized a right in the appellant to command that counsel either raise or withhold a challenge to the legality of sentence.  The appellant's ultimate autonomy ends with the decision over whether to take an appeal.  If the appeal is taken, counsel may decide which nonfrivolous issues to raise, including those pertaining to appellant's sentence.  An appellant's recourse upon impasse is to either seek to self-represent or wait to raise an ineffective assistance claim on collateral appeal

Where, as here, the capital convict has expressed a desire to live and to challenge his sentence of death, and counsel has raised an <u>Atkins</u> claim accordingly, the defendant's volitional interest in withdrawing the claim would seem to implicate only his desire to avoid a categorization of "intellectually disabled" with which he does not identify and which he appears to find embarrassing.[78]  As such, his decision to waive the right cannot be "of such moment" to his case when it does not manifest a position <u>vis</u> <u>a</u> <u>vis</u> his capital sentence.  We mean not to diminish the importance of the defendant's interest in

---

[78] Where PCRA counsel seeks to advance an <u>Atkins</u> claim as was done here, we cannot discern any potentially harmful consequence to the defense objective of sentence vacation, any waiver or forfeit of a right--fundamental or otherwise, or any risk of incurring an enhanced punishment.  See Slobogin and Mashburn, <u>The Criminal Defense Lawyer's Fiduciary Duty to Clients with Mental Disability</u>, 68 Fordham L.Rev. 1581 (2000), in which the authors argue that a client's wishes regarding whether to present evidence of mental abnormality as a defense or mitigating factor should generally control where he is competent, but not where the position is the only one available, is very likely to prevail, and its success would do more good than harm.

this regard, but we respectfully disagree that such an interest is "fundamental" *to one's case* as that term is contemplated in Jones and Nixon.

We note, additionally, that simply because the decision on whether to pursue an Atkins hearing relates to a potential constitutional right in the defendant does not necessarily elevate it to the rank of a fundamental decision within the Jones rubric on who should decide. See, e.g., Wainwright, supra (holding defense counsel has ultimate authority in deciding whether or not to advance defendant's Fifth Amendment rights through a motion seeking suppression of defendant's statement allegedly obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Nor does the fact that a decision has importance and carries significant consequences mean that it implicates rights judicially recognized as so personal and fundamental that counsel implements it subject to defendant's veto power. Indeed, numerous defense decisions that have been held to lie within a counsel's ultimate discretion are clearly of great importance and consequence to a defendant's case. See, e.g., United States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010) ("[d]eciding whether to seek a mistrial (or whether to accept or reject a mistrial offered by the trial court)" falls to counsel and not defendant).

In Chapman, the federal circuit court of appeals left the decision over whether to seek or accept an offer of mistrial to counsel in large part because the many technical considerations to be identified and evaluated in such a matter bring the decision within the realm of the strategic and tactical. Id. Deciding whether a defendant should pursue the Eighth Amendment bar to capital punishment under Atkins likewise requires an assessment of complex legal and highly technical diagnostic considerations. This fact

further distinguishes the Atkins hearing decision from the fundamental decisions enumerated in Jones. Again, part of what qualifies the decisions regarding whether to plead guilty, or attend trial, or testify in one's defense as fundamental ones resting with the defendant is the recognition that the defendant has an intimate knowledge and understanding of the facts and circumstances of his or her underlying case that is crucial to making such decisions. The same cannot be said for the defendant with a potentially colorable Atkins claim, where the very question asking whether a defendant meets the psychological criteria of "intellectually disabled" for purposes of the Eighth Amendment turns on a complex, diagnostic inquiry into whether the defendant experienced onset of both sub-average intellectual functioning as revealed by IQ tests and adaptive functioning deficits based on standards and definitions adopted in the DSM and AAIDD before the age of eighteen. In short, the intricacies and technical nature of the categorical assessment at issue takes it outside the scope of basic, fundamental decisions subject to a defendant's control.

In light of the foregoing, we find that, where confronted with neither a basic, fundamental decision concerning Appellant's PCRA challenge nor disagreement between counsel and Appellant with respect to the overarching objectives of the challenge, the PCRA court erred in ruling that counsels' authority to seek an Atkins hearing was subject to Appellant's veto. Furthermore, by acting directly on Appellant's pro se letter moving for the court to accept his waiver of the counseled Atkins claim, the PCRA court impermissibly invited hybridized representation. What our jurisprudence has consistently prohibited at both trial and appellate levels when strategic disagreements arise between defendant and counsel is the option of hybrid

representation, where an otherwise represented defendant acts as <u>de</u> <u>facto</u> co-counsel exercising control over parts of the defense. <u>Ellis</u>, <u>supra</u> (holding there is no right to hybrid representation on appeal); <u>cf</u> <u>Commonwealth v. Cooper</u>, 611 Pa. 437, ___, 27 A.3d 994, 1000 (2011) (upholding court's decision to acknowledge and give force to a <u>pro</u> <u>se</u> filing from a counseled defendant where it dovetailed with counsel's strategy and where counsel ultimately adopted it). <u>See</u> <u>also</u> "Pennsylvania Rule of Appellate Procedure 3304. Hybrid Representation."[79] The purpose behind the policy is to promote efficiency in representation and to avoid conflicting strategies in the defense. <u>Id.</u> In the event a represented defendant presents a <u>pro</u> <u>se</u> pleading, motion, or filing to the court, therefore, the court shall not entertain it but shall, instead, forward it to counsel who may then decide whether to act on the defendant's concern. <u>Ellis</u>, <u>supra</u>.

The proper course for the PCRA court to have taken, therefore, would have been to refrain from acting upon Appellant's <u>pro</u> <u>se</u> letter and to forward it to counsel. By, instead, unilaterally inviting Appellant to deliver a prepared statement in opposition to counsel's chosen course of representation, the court pitted defendant and counsel against one another during the PCRA hearing.

---

[79] Rule 3304. Hybrid Representation, provides:
> Where a litigant is represented by an attorney before the Court and the litigant submits for filing a petition, motion, brief or any other type of pleading in the matter, it shall not be docketed but forwarded to counsel of record.

> *Note:* The present rule is premised on <u>Commonwealth v. Ellis</u>, 534 Pa. 176, 626 A.2d 1137 (1993) and is to be distinguished from litigants who are pro se in litigation.

Pa.R.A.P. 3304.

We, therefore, remand this matter to the PCRA court for consideration of the counseled Atkins-based claim and a determination as to whether it merits a full evidentiary hearing consistent with Commonwealth v. Miller, 585 Pa. 144, 888 A.2d 624 (2005) (setting forth elements that appellant must prove by a preponderance of the evidence in order to receive Atkins-based relief). If, on remand, Appellant continues to express disagreement with counsels' strategic choice, he may seek a hearing pursuant to Commonwealth v. Grazier, 611 Pa. 437, 713 A.2d 81 (1998) as to his competency to self-represent.[80]

**Claim 8. Whether Appellant is Entitled to a New Sentencing Hearing Because the Court Excused a Juror for Expressing only a General Objection to the Death Penalty, in Violation of Witherspoon v. Illinois and Whether Counsel were Ineffective for Failing to Properly Litigate the Issue.**

As with the second, third, and fifth issues raised by Appellant's brief to this Court, Appellant did not raise this allegation in his amended PCRA petition, but instead included it in his "Petitioner's Supplement and Response in Opposition to the Commonwealth's Motion to Dismiss and Reply in Support of his Motion for Relief pursuant to Atkins v. Virginia," filed on November 10, 2003. Also, as with those previous issues, the Commonwealth asserts that this allegation has been waived for failure to include it in a

---

[80] Of course, counsel may, in the alternative, decide that it would be best for Appellant and his post-conviction interests if counsel were to adhere to his personal request to discontinue the Atkins claim. Such adherence would not constitute ineffective assistance unless Appellant is incompetent to make such a decision and the claim is colorable. Confronted with any indicia of incompetence, counsel would be required to request a full, comprehensive, and probing competency hearing in which the court may ascertain whether Appellant understands the nature of the claim he is withdrawing and the consequences of its withdrawal.

court approved supplement/amendment. Commonwealth's brief at 82 (citing Reid, ___ Pa. at ___, 99 A.3d at 484; Elliott, 622 Pa. at 261, 80 A.3d at 430)).

Appellant does not point to the location in the record where the PCRA court granted him permission to supplement/amend his request for post-conviction relief to include this claim, and, as with the prior issues, he does not dispute that he did not obtain permission to amend his PCRA petition but instead asserts via his February 2, 2015, reply brief that he was prevented from curing this deficiency by the PCRA court's failure to provide proper Rule 909 notice. For the reasons expressed with regard to the previous issues, we find that this issue has not been preserved for our review.

**Claim 9.** **Whether Petitioner is Entitled to Relief Because of the Prosecutor's Improper Guilt and Penalty Phase Arguments and Whether Counsel were Ineffective in Failing to Litigate these Issues**.

Appellant asserts that the prosecution sought to inflame the jury's passions and prejudices by "urging the jury to base its verdict on irrelevant factors" including his prior bad acts and proclivity to commit crimes in the future, and, at the penalty hearing, by resorting to a blatant call for vengeance. Appellant's brief at 74. Our standard for addressing allegations of prosecutorial misconduct is as follows:

> It is well settled that, during the penalty phase, where the presumption of innocence no longer applies, a prosecutor is afforded reasonable latitude and may properly comment on the evidence with oratorical flair. Comments by a prosecutor do not constitute reversible error unless their unavoidable effect was to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true penalty determination.
> * * *
> [R]emarks made by a prosecutor must be evaluated in the context in which they occur. Furthermore [in closing argument], the prosecutor may fairly respond to points made in the defense closing.
> * * *

> [W]ithin reasonable bounds enforced by the trial court, a prosecutor may employ oratorical license and impassioned argument in arguing for the death penalty. While reference to irrelevant matters should be avoided, we note that murder victims are not simply props or irrelevancies in a murder prosecution, and innocuous references to victims and their families are not necessarily prejudicial.

Commonwealth v. Freeman, 573 Pa. 532, 827 A.2d 385, 408–09, 413, 415 (2003) (internal citations and quotation marks omitted).

Specifically, during its guilt trial summation, the prosecution offered the following:

**PROSECUTION:** [A]nd how many prior incidents of nasty, malicious, violent acts against this woman's daughter do you have to hear about, non PCP, angel dust, quote, unquote, induced before you recognize what this case is all about?

**DEFENSE:** Objection.

**COURT:** Overruled.

N.T. 2/14/96 at 84. This guilt phase challenge, however, is waived, as Appellant's PCRA petition directed the present challenge only to his sentence. See Pa.R.A.P. 302(A) (Issues not raised in the lower court are waived and cannot be raised for the first time on appeal); Commonwealth v. Lambert, 568 Pa. 346, 361, 797 A.2d 232, 241 (2001).

Appellant also asserts that the prosecution's summation in Appellant's penalty trial improperly directed the jury to show him no mercy in its deliberations:

**PROSECUTION:** [I]f there is really no doubt in your mind that the aggravating circumstances in this case are all right here and there is no mitigation in this brutal, senseless, horrible killing, then follow the law and give Mr. Mason the same mercy that he gave Iona Jeffries.

2/16/96 at 114.

In Commonwealth v. Chmiel, 612 Pa. 333, 458, 30 A.3d 1111, 1184-85 (2011), this Court upheld a virtually identical penalty-phase summation as an appropriate appeal for the death penalty if the jury determines that aggravating circumstances outweigh

mitigating circumstances, because that is the only issue before the jury in a penalty phase.   Moreover, here, as in Chmiel, the trial court otherwise expressly cautioned the jury in its instructions that neither passion nor prejudice should influence its decision one way or the other. N.T. 2/16/96 at 140.   Juries are presumed to follow such instructions. Chmiel, supra.   Accordingly, we discern no basis for relief on this claim.

### Claim 10.    Whether Appellant is Entitled to Discovery.

Appellant next submits that he is entitled under Pennsylvania Rule of Criminal Procedure 902(E)(2)[81] to discovery of the actual tapes of the 911 calls in this case, as, he contends, the transcript he was provided indicated that portions of the tape were "unreadable."   Appellant's brief at 80.   Discovery of the tapes, he argues, is needed to substantiate the accuracy of the transcription.   Appellant also contends that he is entitled to discovery of copies of autopsy photographs to show a forensic expert, who "can make determinations about whether a given homicide is a rage killing or not[.]"   Appellant's brief at 81.

Initially, with respect to the request for autopsy photographs, Appellant fails to so much as indicate whether trial counsel requested such purportedly critical evidence--let alone direct us to where in the record we may find the request--nor does he address whether counsel on direct appeal raised a claim asserting error with a trial court ruling denying trial counsel's request.   As such, we know not whether the issue was waived or, instead, previously preserved and litigated.   If the former is true, and assuming for the

---

[81] Rule 902(E)(2) provides that "[o]n the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause."   Pa.R.Crim.P. 902(E)(2).

sake of argument that the evidence was, as Appellant now asserts, critical to a fair trial and sentencing, then it was incumbent upon Appellant to couch the present claim within an ineffective assistance of prior counsel claim. Having failed to do this, we find the issue waived. See Commonwealth v. McGill, 574 Pa. 574, 832 A.2d 1014 (2003) (holding layered ineffectiveness claim is required to preserve an otherwise waived claim); 42 Pa.C.S. § 9544(b) (providing that an issue is waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.") See also Commonwealth v. Ragan, 560 Pa. 106, 116, 743 A.2d 390, 395 (1999). If, in the alternative, the claim as raised herein was previously litigated, then it is not cognizable under the PCRA. See 42 Pa.C.S. §§ 9543(a)(3) and 9544(a)(2); Commonwealth v. Spotz, 610 Pa. at 45, 18 A.3d at 260.

Notwithstanding the claim preservation problem, we find that Appellant fails to demonstrate that he made a showing of good cause for the PCRA court to grant the discovery requests. In his argument, he provides neither a contextual nor a specific explanation that was offered to the PCRA court as to what purpose may be served by discovery of the actual 911 tapes, other than to say they may "provide him with information about this case." Appellant's brief at 80. As for his request for autopsy photos, he fails to develop his cursory claim that "[f]orensic experts can make determinations [from autopsy photographs] about whether a given homicide is a rage killing or not" in any meaningful way. Appellant's brief at 81. No discussion ensues regarding authority that may exist on this broad pronouncement, nor is there any attempt to relate such prospective evidence to the balance of evidence admitted at trial on the element of specific intent to kill. We find this undeveloped claim waived. See

Commonwealth v. Walter, 600 Pa. 392, 966 A.2d 560, 566 (2009) (holding claims waived for failure to develop them).

**Claim 11.** **Whether Appellant is Entitled to Relief From His Conviction and Sentence Because of the Cumulative Effect of the Errors.**

Appellant contends, in this issue, that the cumulative effect of errors committed by the trial court and trial counsel's ineffectiveness prevented the jury from hearing important evidence relevant to making its guilt phase and sentencing determinations. The Commonwealth responds that this Court has previously stated that "no number of failed claims may collectively attain merit if they could not do so individually." Tedford, 960 A.2d at 56.

Where "multiple instances of deficient [trial counsel] performance are found, the assessment of prejudice properly may be premised upon cumulation." Commonwealth v. Johnson, 600 Pa. 329, 345, 966 A.2d 523, 532 (2009). Because we have deemed all of Appellant's ineffectiveness claims meritless and, thus, without prejudice, no cumulative prejudicial effect could have attained. See Commonwealth v. Thomas, 615 Pa. 477, 500, 44 A.3d 12, 25 (2012). This claim fails.

Accordingly, with respect to issues one through six, and eight through eleven, we affirm the order of the PCRA court. With respect to issue seven, we remand to the PCRA court for further proceedings consistent with this decision. Jurisdiction is relinquished.

Mr. Justice Eakin did not participate in the decision of this case.

Mr. Justice Baer and Madame Justice Todd join the opinion.

Mr. Chief Justice Saylor files a concurring and dissenting opinion.